POPOVICH, Judge:
The Fourth Amendment to the United States Constitution provides:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
U.S. CONST, amend. IV.[1] Today, in light of this Constitutional mandate, we are asked to balance the individual’s right to liberty against the societal need for police authority. In so doing, we must determine whether a Terry[2] frisk, which produced contraband, constituted a reasonable search and seizure within the perimeters of the above provision.
*604 The appellee in this case, Robert Marconi, filed a motion to suppress evidence that he claimed was illegally procured during a cursory pat-down for weapons. Before us is the Commonwealth’s appeal from the final order entered in the Court of Common Pleas of Delaware County granting Marconi’s motion. Following review, we affirm.
The trial court has provided us with its findings of fact. After an independent reading of the suppression hearing notes of testimony, we conclude that the trial court’s statement is adequately supported by the record. Thus, we adopt its recitation for purposes of appeal. We have added citations to the record and elaborations, where necessary, in footnotes.
1. On August 18, 1989 at approximately 7:15 p.m., Sgt. Charles Palo of the Ridley Township Police Department was on patrol duty in plain clothes in an unmarked vehicle. [N.T., July 11, 1990, at 7]
2. Officer Palo has been a police officer for 12 years and is qualified as an expert in narcotics investigation. [Id. at 6-7]
3. While in the vicinity of the 600 block of South Avenue in Ridley Township, Sgt. Palo observed a 1982 Cadillac automobile pull into the parking lot of Our Lady of Lourdes Church and School which abuts South Avenue. [Id. at 8] The church and school were closed at that time. [77] Officer Palo then pulled his vehicle into a parking lot across the street from the subject Cadillac automobile and parked in an area approximately 75 to 100 feet away from the Cadillac automobile. [Id. at 9] There had been numerous previous acts of vandalism at the school and Sgt. Palo decided to observe the [...] Cadillac [...] so as to determine why [it] had parked in the school parking lot. [77] The weather was clear and there was daylight at the time. [77]
4. Sgt. Palo observed the driver of the subject vehicle, defendant Robert Marconi, exit from the driver’s side of the [car] and begin to vomit. [Id. at 10] The defendant then walked to the passenger side of the vehicle where [a] female passenger exitedf.] [She] entered the driver’s side *605 of the vehicle while defendant entered the passenger side[.] [Id. at 11] After observing the subject vehicle for a period of three to five minutes, Sgt. Palo drove his vehicle to the subject vehicle to investigate. [Id. at 12] He wanted to determine the condition of each of the vehicle’s occupants to discover if they were intoxicated. He also sought to determine why they were parked next to the school. [Id. at 13. See also id. at 24-25]
5. Sgt. Palo then parked near the subject vehicle, exited his vehicle and walked to the driver’s window. He recognized the driver as the defendant’s wife. [Id. at 16] Sgt. Palo had come into contact with the defendant and his wife in the past in responding to certain domestic disputes between them. [Id.] After identifying himself, Sgt. Palo observed the defendant as he appeared to conceal something in the rear of his pants; therefore, Sgt. Palo told the defendant to place his hands on the dashboard. [Id. at 15][3] Sgt. Palo was concerned for his safety as he knew that the defendant had been charged previously with drugs and weapons offenses. [Id. at 16-17][4]
6. Sgt. Palo advised the defendant to exit the vehicle whereupon he performed a frisk of the defendant to determine if he had any weapons on his person. [Id. at 17-18] Although he felt no weapon when patting the *606 rear pants pocket area, he felt an object in defendant’s left rear pants pocket. [Id. at 18][5] He reached into that pocket and retrieved two plastic bags which appeared to contain controlled substances. The smaller of the bags (Commw.Exh. No. 2) appeared only to contain residue. The larger of the bags (Commw.Exh. No. 1) contained approximately 1.08 grams of controlled substances which, if felt during a pat down, would feel like a button or a wad of paper. [Id. at 18-19][6]
7. Sgt. Palo placed the defendant under arrest for alleged drug offenses and transported him to the police station. [Id. at 19] In searching the defendant at the police station, Sgt. Palo removed $324.00 from defendant’s person. [Id. at 20] Sgt. Palo then provided defendant with the Miranda warnings whereupon defendant stated that he, in fact, did have methamphetamine, but possessed it for personal use and that he snorts it. [Id. at 20-22]
8. Sgt. Palo at no time noticed an odor of alcohol on defendant’s person nor did defendant have any problem speaking. [Id. at 22-23][7]
Trial court opinion, at 1-4.
Based on the foregoing, the trial court was unable to find that Sgt. Palo had probable cause to believe that Marconi possessed evidence of crime which would justify an intrusion into his pants pocket at the time a frisk for weapons was conducted. Trial court opinion, at 5. We agree.
Before we discuss the Commonwealth’s issue on appeal, we note that the Commonwealth certified in good faith that *607 the instant suppression order has substantially hampered the prosecution of this case.[8] In light of the certification, we may entertain this appeal. Commonwealth v. Dugger, 506 Pa. 537, 546-47, 486 A.2d 382, 386 (1985); see Commonwealth v. Rodriguez, 385 Pa.Super. 1, 2, 559 A.2d 947 (1989) ; Commonwealth v. Switzer, 375 Pa.Super. 137, 140, 543 A.2d 1216, 1218 (1988). See Commonwealth v. Defelice, 248 Pa.Super. 516, 522, 375 A.2d 360, 363 (1977).
Our scope and standard of review under the circumstances are established. Here, we may consider
only the evidence of the defendant’s witnesses and so much of the Commonwealth evidence that, read in the context of the record as a whole, remains uncontradicted. Furthermore, our scope of appellate review is limited primarily to questions of law. We are bound by the suppression court’s findings of fact if those findings are supported by the record. Factual findings wholly lacking in evidence, however, may be rejected.
Commonwealth v. Person, 385 Pa.Super. 197, 200, 560 A.2d 761, 762-63 (1989) (citations omitted); Commonwealth v. Stine, 372 Pa.Super. 312, 314, 539 A.2d 454, 455 (1988). See Commonwealth v. Cauto, 369 Pa.Super. 381, 393-94, 535 A.2d 602, 608-09 (1987) (this Court may reverse the suppression court only if its legal conclusions, drawn from the facts in the record, are erroneous). Cf Commonwealth v. Fromal, 392 Pa.Super. 100, 111-12, 572 A.2d 711, 717 (1990) .
On appeal, the Commonwealth raises one issue: whether probable cause to seize an object can arise where a police officer, during a frisk for weapons, feels what he believes (based on his training and experience) to be methamphetamine in the defendant’s pocket. The Pennsylvania Association of Criminal Defense Lawyers, recognizing the importance of this issue, filed a brief of amicus curiae on behalf of Marconi. They phrased the statement of the *608 question involved as follows: “Should the Pennsylvania Courts recognize an exception to the probable cause/warrant requirements of the Fourth Amendment and Article I, § 8 based on the sense of touch and reputation of the person searched?” Amicus brief, at 4.[9] After a review of the record in this case, the parties’ briefs and the applicable law, we conclude that the Sergeant’s search exceeded the limits set forth by the United States Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and by the courts of this Commonwealth.[10] Accordingly, we affirm the trial court’s order in this case.
In Terry, the Supreme Court defined the permissible scope of a “stop and frisk.” [11] Eleven years later, the *609 Supreme Court cogently reiterated the principles underlying Terry in Ybarra v. Illinois, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). There, the Supreme Court wrote:
[t]he Terry case created an exception to the requirement of probable cause, an exception whose ‘narrow scope’ this Court ‘has been careful to maintain.’ Under that doctrine a law enforcement officer, for his own protection and safety, may conduct a patdown to find weapons that he reasonably believes or suspects are then in the possession of the person he has accosted. [Citation omitted]. Nothing in Terry can be understood to allow a generalized *610 ‘cursory search for weapons’ or, indeed, any search whatever for anything but weapons. The ‘narrow scope’ of the Terry exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked, even though that person happens to be on premises where an authorized narcotics search is taking place.
Id. at 93-94, 100 S.Ct. at 343 (emphasis added).
In Commonwealth v. Canning, 402 Pa.Super. 438, 587 A.2d 330 (1991) this Court found that an officer who arrested a man for public drunkenness exceeded the bounds of Terry when, during a frisk for weapons, the officer reached into the defendant’s pocket and removed two small packets, one containing methamphetamine and the other containing marijuana. This Court held that the officer had no reason to believe that the two packets were weapons. In applying the Terry holding, this Court stated:
In Terry, the United States Supreme Court articulated a police officer’s “narrowly drawn” authority to conduct a reasonable search for weapons for the officer’s protection. Id. at 27, 88 S.Ct. at 1883. The officer may pat down or frisk a suspect for weapons only if he reasonably believes that criminal activity is afoot, and that the suspect may be armed and dangerous. Id. The officer must be able to articulate specific facts to justify his belief that the suspect may be armed and dangerous. Ybarra v. Illinois, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). Moreover, the scope of a Terry search is limited. Because the “sole justification of the search ... is the protection of the police officer and others nearby, ... it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer. ” Terry v. Ohio, supra, 392 U.S. at 29, 88 S.Ct. at 1884. In the instant case, the officer exceeded the scope of a Terry search. In order to reach into a suspect’s pockets during a Terry search, the officer would have to feel something that appears to be a *611 weapon. “Nothing in Terry can be understood to allow ... any search whatever for anything but weapons.” Ybarra v. Illinois, supra, 444 U.S. at 93-94, 100 S.Ct. at 343. Herein, Officer McCarthy, did not articulate any specific facts to justify a belief that appellant might be armed and dangerous nor did he confine his search to items that may have reasonably appeared to be weapons. As noted by the Municipal Court judge, the items retrieved from appellant’s pocket, two small plastic bags, one containing a white powder and one containing a green weed, do “not feel like a gun, knife, or a blackjack or anything else.” N.T., December 12, 1985, p. 12. Thus, the search cannot be justified under Terry.
Id., 402 Pa.Superior Ct. at 440-41, 587 A.2d at 331-32 (emphasis added).
Very clearly, the search in the instant case can not be justified under the Terry rationale or its progeny. See Commonwealth v. Luddy, 281 Pa.Super. 541, 422 A.2d 601 (1980). See Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (in conducting an investigatory detention of an individual in a motor vehicle, the officer may frisk the individual for weapons if the officer has formed a reasonable belief that the person is armed and dangerous) (emphasis added). See also Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) (when the justification for conducting a search is the protection of the officer, s/he must be able to point to particular facts from which it may be inferred that the individual was armed and dangerous); Commonwealth v. Berrios, 437 Pa. 338, 340-341, 263 A.2d 342, 343 (1970) (“the arresting officer must be able 'to point to particular facts from which he reasonably inferred that the individual was armed and dangerous.’ Good faith on the part of the officer, in itself, is not enough.”) (citations omitted).
The Commonwealth asks us to accept or create a “plain touch” extension to the “plain view” rule, which in effect would yield yet another erosion to the Fourth Amendment warrant requirement. The Commonwealth argues that to adopt a “plain touch” doctrine would not be tantamount to *612 broadening the exceptions to the warrant requirement. Rather, the Commonwealth contends that “plain touch” is a form of “plain view” and that when a police officer feels what he believes to be a controlled substance based upon his experience, probable cause to conduct a search arises.
We begin our analysis by recognizing that warrantless searches are presumed unreasonable unless the search is justified by an exception to the warrant requirement. Commonwealth v. York, 381 Pa.Super. 55, 552 A.2d 1092 (1989). See Coolidge v. New Hampshire, 403 U.S. 443, 454, 91 S.Ct. 2022, 2031, 29 L.Ed.2d 564 (1971) (“[a]s a general rule a search or seizure without a warrant is deemed unreasonable for constitutional purposes.”). In limited situations, the warrant requirement is excused. For example, see Carroll v. U.S., 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) (discussing the automobile exception);[12] Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (search incident to a lawful arrest); New York v. Belton, 453 U.S. 454,101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) (same); Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (hot pursuit); U.S. v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) (consent); Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (exigent circumstances); Roaden v. Kentucky, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973) (same); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (evidence in plain view). Moreover, when an officer reasonably believes that criminal activity is afoot, he is authorized under Terry to conduct a protective search; i.e., a pat-down for weapons. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).[13] *613 Plainly, probable cause is a prerequisite to any search. Commonwealth v. Pinno, 433 Pa. 1, 248 A.2d 26 (1968). Thus, where less than probable cause exists, a cursory patdown for weapons may be all that is acceptable. Terry, supra. See also Alabama v. White, — U.S.-,-, 110 S.Ct. 2412, 2414-17, 110 L.Ed.2d 301, 308-09 (1990).
However, what begins as a lawful investigatory stop may escalate to an arrest if it is supported by probable cause. Commonwealth v. Elliott, 376 Pa.Super. 536, 551, 546 A.2d 654, 661 (1988). In Elliott, supra, this Court held that
[а] n officer may briefly detain a suspect and then proceed to conduct an actual search if the facts gleaned during that detention ripen into probable cause to arrest. Probable cause to arrest exists where the facts at the time of arrest would warrant a prudent person in believing that an offense had been committed, and that the suspect was the perpetrator of the offense.
Id. (citations omitted). See also Commonwealth v. Chamberlain, 332 Pa.Super. 108, 480 A.2d 1209 (1984) (accord); Commonwealth v. Palm, 315 Pa.Super. 377, 462 A.2d 243 (1983) (accord). Cf. Commonwealth v. Smith, 511 Pa. 36, 511 A.2d 796 (1986) (mere suspicions do not constitute probable cause to support a search warrant). See Commonwealth v. Rodriguez, 526 Pa. 268, 585 A.2d 988 (1991) (defines probable cause). See Commonwealth v. Klinedinst, 403 Pa.Super. 605, 589 A.2d 1119 (1991) (refers to Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and the “totality of the circumstances” test for probable cause).
We have applied these standards to the instant case. In so doing, we reach the same outcome as the trial court. Here, we find no evidence to support a conclusion that at the time of the pat-down, Sergeant Palo had probable cause to believe that Marconi’s pants pocket contained drugs. Probable cause is the probability of criminal conduct,[14] not the possibility of criminal conduct.
*614 The facts show that Marconi was truly ill when he exited his automobile (N.T., July 11, 1990, at 22, 33), that he was with his family {id. at 29), that he was dressed casually {id. at 32), that he was not armed or dangerous {see N.T., July 11, 1990), that Sergeant Palo lacked reason to call for backup police aid or to draw his weapon {id. at 29), and that the items which Sergeant Palo confiscated could have been almost anything. In fact, when defense counsel asked, “You have no dispute that you didn’t feel anything on his body that remotely felt like a weapon,” Sergeant Palo replied, “That’s correct.” Id. at 32. See also id. at 33-34.
Despite the Commonwealth’s assertions that “[t]hrough both specialized training and experience, Officer Palo knew how “rock” methamphetamine felt ...,” [15] we can not condone the formulation of probable cause based on mere speculation, conjecture or hindsight. Terry, supra. See Commonwealth v. Hunt, 280 Pa.Super. 205, 421 A.2d 684 (1980). Cf. Appellant’s brief, at 11-13, 17-18, 20.
Moreover, all of the cases to which the Commonwealth refers deal with the “plain touch” of a container, not a person. We might be inclined to agree that when a police officer feels the shape of a gun concealed in a bag, probable cause to search is present. U.S. v. Russell, 655 F.2d 1261 (D.C.Cir.1981), vacated in part by U.S. v. Russell, 670 F.2d 323 (D.C.Cir.1982); U.S. v. Portillo, 633 F.2d 1313 (9th Cir.1980). However, we are not willing to use this rationale to justify a search of an individual where probable cause *615 can not exist.[16]
Here, the minute amount of drugs that was found on Marconi’s person could not have been identified through the sense of touch. The object is as consistent in feeling with a button or an aspirin as it is with methamphetamine.[17] To *616 sanction a search under the facts of this case would be to allow police officers to assume that all small objects in one’s pocket could be drugs.[18] This, we can not do. See Commonwealth v. Hunt, 280 Pa.Super. 205, 421 A.2d 684 (1980). Cf Commonwealth v. Espada, 364 Pa.Super. 604, 528 A.2d 968 (1987); Commonwealth v. Jackson, 359 Pa.Super. 433, 519 A.2d 427 (1986).
We can not lose sight of the fact that this began as a Terry frisk. Once the officer was satisfied that Marconi was not armed and dangerous, the inquiry should have ended. Commonwealth v. Wasiuta, 280 Pa.Super. 256, 421 A.2d 710 (1980). See Commonwealth v. Carter, 334 Pa.Super. 369, 483 A.2d 495 (1984). Cf. Commonwealth v. Pine, 370 Pa.Super. 410, 536 A.2d 811 (1988). Cf. Commonwealth v. Williams, 287 Pa.Super. 19, 429 A.2d 698 (1981).
*617 Accordingly, for the foregoing reasons, we affirm the trial court’s order.
Order affirmed.
KELLY, J., files a concurring opinion.

. Comparatively, Article I, Section 8 of the Pennsylvania Constitution reads:
That the general, great and essential principles of liberty and free government may be recognized and unalterably established, WE DECLARE that— ... Sec. 8. Security from searches and seizures. The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.
PA. CONST, art. I, § 8.

. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

. On cross-examination, Sgt. Palo admitted that he never saw anything in Marconi’s hand (N.T., July 11, 1990, at 26) and that when Marconi reached behind his back, “it looked like his hand was back by his back pocket. Whether it went in or not, I don’t know.” Id. at 27.

. The Sergeant testified as follows:
I know Mr. Marconi was convicted for manufacturing methamphetamine. I also knew that he was also arrested for having a cache of weapons in his home in Springfield. I also knew that he was an associate of Outlaw Motorcycle gangs, the Warlocks and the Pagans. And that he was involved with the Castle, that had lots of crime committed over in Nether Providence.
N.T., July 11, 1990, at 16. On cross-examination, Sgt. Palo said that no one had given him any information that Marconi was armed and dangerous on the day in question. See id. at 24, 31. Further, he stated that his knowledge of Marconi’s reputation stemmed from what he had read in the newspaper "years ago” and from talking to police officers about Marconi "in the past.” Id. at 31. See id. at 32.

. Regarding the frisk, Sgt. Palo stated that when he touched Marconi's back pocket, he “felt something there. It felt like a rock or a pebble.” N.T., July 11, 1990, at 18. Sgt. Palo "then reached in and pulled out what was in that pocket." Id.

. Sgt. Palo testified that in his experience, when he has frisked individuals and felt "a hard type of object of this nature, ... when [he] retrieved it, [he] found it to be methamphetamine.” N.T., July 11, 1990, at 19. He also stated, “Mr. Marconi’s been arrested for the manufacture of methamphetamine. That gave me the belief that that was methamphetamine in his pocket.” Id.

. Marconi also had no trouble walking. N.T., July 11, 1990, at 22.

. The seized physical evidence, to wit, the suppressed drugs, formed the basis of the charge against Marconi.

. See Commonwealth v. Brundidge, 404 Pa.Super. 106, 590 A.2d 302 (1991) (discusses the Fourth Amendment); see Commonwealth v. Edmunds, 526 Pa. 374, 388-89, 411-12, 586 A.2d 887, 894, 906 (1991) (discusses the Pennsylvania Constitution); Commonwealth v. Sell, 504 Pa. 46, 470 A.2d 457 (1983) (same).

. See In Interest of Dixon, 356 Pa.Super. 105, 514 A.2d 165 (1986). See also Commonwealth v. Edmunds, 526 Pa. 374, 586 A.2d 887 (1991).

. In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court explained the difference between a "stop” and an "arrest.” It stated:
On the one hand, it is frequently argued that in dealing with the rapidly unfolding and often dangerous situations on city streets the police are in need of an escalating set of flexible responses, graduated in relation to the amount of information they possess. For this purpose it is urged that distinctions should be made between a “stop" and an "arrest" (or a “seizure” of a person), and between a “frisk” and a “search.” Thus, it is argued, the police should be allowed to “stop” a person and detain him briefly for questioning upon suspicion that he may be connected with criminal activity. Upon suspicion that the person may be armed, the police should have the power to “frisk” him for weapons. If the “stop” and the “frisk” give rise to probable cause to believe that the suspect has committed a crime, then the police should be empowered to make a formal “arrest,” and a full incident "search” of the person. This scheme is justified in part upon the notion that a "stop” and a “frisk" amount to a mere "minor inconvenience and petty indignity,” which can properly be imposed upon the citizen in the interest of effective law enforcement on the basis of a police officer’s suspicion.
Id. at 10-11, 88 S.Ct. at 1874 (footnotes omitted). Later, the Court stated:
But we deal here with an entire rubric of police conduct — necessarily swift action predicated upon the on-the-spot observations of the *609 officer on the beat — which historically has not been, and as a practical matter could not be, subjected to the warrant procedure. Instead, the conduct involved in this case must be tested by the Fourth Amendment’s general proscription against unreasonable searches and seizures. Nonetheless, the notions which underlie both the warrant procedure and requirement of probable cause remain fully relevant in this context. In order to assess the reasonableness of Officer McFadden’s conduct as a general proposition, it is necessary "first to focus upon the governmental interest which allegedly justifies official intrusion upon the constitutionally protected interest of the private citizen,” for there is "no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails.” [Citation omitted]. And in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. [____] And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief” that the action taken was appropriate? [Citations omitted].
Id. at 20-22, 88 S.Ct. at 1879-80 (footnotes omitted). See also id. at 23, 27, 88 S.Ct. at 1881, 1883. Finally, the Court concluded:
Each case of this sort will, of course, have to be decided on its own facts. We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others’ safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.
Id. at 30-31, 88 S.Ct. at 1884.

. Cf. Commonwealth v. Trunzo, 404 Pa.Super. 15, 589 A.2d 1147 (1991).

. To determine whether a search or seizure is reasonable, we must balance the individual’s right to be free from unwarranted governmental interference against society’s interest in adequate and safe law enforcement. Commonwealth v. Davidson, 389 Pa.Super. 166, 171, 566 A.2d 897, 899 (1989); Commonwealth v. Hinkson, 315 Pa.Super. 23, 461 A.2d 616 (1983).

. Commonwealth v. Gray, 509 Pa. 476, 503 A.2d 921 (1985).

. Appellant’s brief, at 18. The Commonwealth continued as follows: [Sergeant Palo] had felt similar items in prior searches. Those items had proven to be "rock” methamphetamine. His training, experience, personal knowledge of the defendant, together with the defendant’s behavior which indicated a desire to conceal something from the officer in the area of his body where the hard object was felt, all point to a finding of probable cause. Although near certainty of an object’s incriminatory nature is not necessary, and there need only be a practical, nontechnical probability that incriminating evidence is involved [Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) ], Officer Palo testified that upon feeling the rock-like object, he believed that it was contraband.

Id.

. As Marconi recognizes, it would be inconsistent with the purpose underlying Terry to apply ‘‘plain touch” in its purest form to individuals. Appellee’s brief, at 10.

. The Commonwealth asks this Court to liken the sense of touch to the other senses. For the following reasons, we reject the Commonwealth's rationale.
“Seeing,” "hearing,” "smelling," and "tasting” are senses that are refined through an officer’s experience. The police are taught to recognize certain sounds, smells and tastes during their training. Commonwealth v. Kendrick, 340 Pa.Super. 563, 571, 490 A.2d 923, 927 (1985) ("... it is important to focus on the circumstances as seen through the eyes of a trained officer and not to view the situation as an average citizen might____ [P]robable cause does not deal in certainties; rather, a court is faced with the factual and practical considerations of everyday life which affect how reasonable and prudent men act.”) (citations omitted).
Conversely, when an individual feels an object through a pants pocket, and we now confine our analysis to the case at hand, the sense of touch is not so definitive. The structure and shape of a small packet is not unique so as to preclude other options as to what that item might be. In fact, the packet in this case has no discernible characteristics and does not reveal itself in a distinctive way.
We do not believe that it would be feasible to recognize a tactile equivalent to the plain view doctrine under the rationale advanced by the Commonwealth. Sights, sounds, smells and tastes are generally consistent to the senses. Here, the Commonwealth posits that probable cause arose when a police officer touched an object in the defendant’s pants pocket and thought it to be contraband. During a cursory pat-down for weapons however, it would strain logic to conclude that a small packet could, with any sort of probability, be identified as an element of criminal activity.
As we stated in the body of this Opinion, we do not hold that under certain circumstances the sense of touch could not be used as an accurate technique of identity. At times, perception through touch, is a tool as definitive as perception through the other senses. However, under the facts before us, we decline to extend the "plain view doctrine” to encompass “plain touch.” Commonwealth v. Stoner, 236 Pa.Super. 161, 344 A.2d 633 (1975) (in discussing “plain smell” this Court recognized that an individual does not have a reasonable expectation of privacy in unlawful pursuits that are readily apparent by the use of ordinary senses). Cf. United States v. Williams, 822 F.2d 1174, 1182, 1184, 1185 (D.C.Cir.1987). See also Commonwealth v. Lovette, 498 Pa. 665, 450 A.2d 975 (1982).
*616 We note also that in its traditional context, the plain view doctrine is associated with seizures, not searches. Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). See Commonwealth v. Milyak, 508 Pa. 2, 493 A.2d 1346 (1985); Commonwealth v. Ferrari, 376 Pa.Super. 307, 545 A.2d 1372 (1988); Commonwealth v. Weik, 360 Pa.Super. 560, 521 A.2d 44 (1987); Commonwealth v. Cihylik, 337 Pa.Super. 221, 486 A.2d 987 (1985).

. Here, we acknowledge the amicus curiae position that the Commonwealth seeks to permit searches of individuals based on an officer’s knowledge of that individual’s reputation. While reputation is a proper factor to be considered in formulating probable cause, it may not be used as the lone basis for that formulation. In short, reputation by itself may not establish probable cause for a search. U.S. v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).
Due to our disposition of this case, we do not reach a conclusion as to whether the officer founded his suspicions solely on Marconi’s reputation. Besides, to decide this issue based on the record certified to us would be to infringe on the trial court’s function to weigh and assess witnesses’ credibility.
Instead, here, we hold only that a prudent person could not have reasonably believed that an offense was being committed at the time of the stop. Thus, probable cause could not have arisen in this case. Commonwealth v. Elliott, 376 Pa.Super. 536, 546 A.2d 654 (1988).