654 A.2d 1086

COMMONWEALTH of Pennsylvania

v.

Charles DORSEY, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 28, 1994.

Filed Jan. 9, 1995.

Reargument Denied March 2, 1995.

496

Richard H. Anderson, Media, for appellant.

Joseph J. Mittleman, Asst. Dist. Atty., Media, for Com., appellee.

Before McEWEN, TAMILIA and FORD ELLIOTT, JJ.

TAMILIA, Judge.

Charles Dorsey appeals from the January 5, 1994 judgment of sentence entered following a nonjury trial in which he was found guilty of possession,[1] possession with intent to deliver a controlled substance [2] and possession of drug parapheranlia.[3] Following the denial of post-trial motions, appellant was sentenced to a term of eighteen (18) to seventy-two (72) months' imprisonment. The charges stem from the following set of facts.

On October 1, 1992, officers of Ridley Township Police Department and detectives from Delaware County Criminal

1. 35 P.S. § 780–113(a)(16).

2. *Id.,* § 780–113(a)(30).

3. *Id.,* § 780–113(a)(32).

Investigation Division (CID), Narcotics Unit, executed a search warrant at 1400 West MacDade Boulevard, Apt. D371, Woodlyn, Delaware County. The apartment was rented by a Donald Crews who was not at home at the time the warrant was executed. As a result of the execution of the search warrant, a substantial amount of money, marijuana, a scale, bagging materials, and tally sheets were seized.

Towards the conclusion of the search, surveillance officers outside the residence observed Donald Crews and this defendant arrive in a silver colored station wagon. A detective outside recognized at least Crews as the subject of the warrant and followed the pair into the apartment building. The officers inside the building closed the apartment door and situated themselves around the outside of the apartment.

Crews and Dorsey entered the apartment building and proceeded up the stairs towards Crews' apartment. The officers moved in and arrested Crews at the doorway to his apartment. Dorsey was stopped at the top of the stairs by Detective Glen Greenwalt.

Detective Greenwalt, as well as Detective Azpell, testified at the suppression hearing that as Dorsey was [sic] attempted to flee down the stairs and that at the same time Dorsey's right hand appeared to be reaching toward his right pants pocket. Detective Greenwalt identified himself as a police officer and ordered Dorsey to assume a prone position with his hands in front of him. Greenwalt told Detective Azpell to watch Dorsey's hands.

Detective Azpell began a pat down search of Dorsey for his safety and as a result of the suspicious movement of the defendant's hands. He felt a pager attached to Dorsey's belt and a lump in his right pants pocket which he from experience believed it to [be] marijuana. He observed a plastic bag consistent with that used for controlled substances protruding from Dorsey's right pants pocket. Detective Azpell removed that plastic bag which contained

smaller bags of marijuana and also removed a large sum of cash from Dorsey's left pocket.

(Slip Op., Bradley, J., 3/15/94, pp. 2–3.)

On appeal to this Court, appellant argues the trial court erred in denying his motion to suppress the evidence obtained from him during this search. Specifically, appellant contends the trial court erred in finding the police conducted a valid *Terry* [4] search for weapons as the Commonwealth failed to set forth particular facts which show the arresting officer could reasonably infer appellant was armed and dangerous. Since there was no probable cause to arrest appellant and thus conduct a legal search, there must be a reasonable basis for the police officer to believe appellant was armed and dangerous to warrant conducting a protective frisk. Appellant argues he was laying prone on the staircase with his arms outstretched with approximately ten police officers nearby, thus he was no threat to the police. Accordingly, he suggests the evidence does not support a reasonable basis for the officers to believe he posed any threat to them.

In reviewing the denial of a motion to suppress, we must first determine whether the suppression court's factual findings, inferences and legal conclusions are supported by the record. *Commonwealth v. Lopez*, 415 Pa.Super. 252, 609 A.2d 177 (1992). Because the suppression court held for the Commonwealth, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. *Id.* Additionally, it is exclusively the province of the suppression court to determine the credibility of the witnesses and weight to be accorded to their testimony. *Commonwealth v. Neely*, 298 Pa.Super. 328, 444 A.2d 1199 (1982). If the factual findings are supported by the record, then we may reverse only for an error of law. *Lopez, supra,* 415 Pa.Super. at 252, 609 A.2d 177.

A review of the record finds the suppression court had ample evidence to support its decision finding the police lawfully conducted a protective pat-down search of appellant.

4. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

To justify a frisk incident to an investigatory stop, police need to point to specific and articulable facts indicating the person they intend to frisk may be armed and dangerous. *Commonwealth v. Cortez*, 507 Pa. 529, 491 A.2d 111 (1985). Appellant arrived at the scene of an execution of a search warrant for drugs with the named subject of the search. When he saw police, he attempted to flee, putting his hands in his pants. Despite being ordered to place his hands where police could see them, he refused to do so. Clearly, under these facts the police had a reasonable belief their safety was in jeopardy, and a limited search for weapons was warranted. Furthermore, this Court has held that when a police officer is confronted with someone who he reasonably believes is involved in narcotics traffic, a *Terry* pat-down frisk for protection of the officer is proper. *Commonwealth v. Patterson*, 405 Pa.Super. 17, 591 A.2d 1075 (1991) (taking judicial notice that drug dealers are likely to be armed and dangerous). Accordingly, we find appellant's argument to be without merit.

■ Appellant next argues the seizure incident to the pat-down frisk was a violation of Article 1, section 8, of the Pennsylvania Constitution, which protects citizens against unreasonably searches and seizure. The officer conducting the protective *Terry* frisk lacked independent probable cause to remove the bag of drugs from appellant's pocket because it was not in "plain view." Furthermore, appellant argues Pennsylvania does not have a "plain touch" doctrine, *see Commonwealth v. Marconi*, 408 Pa.Super. 601, 597 A.2d 616 (1991), which is an extension of the "plain view" doctrine. Finally, although this Court recognized the "plain touch" doctrine in *Commonwealth v. Johnson*, 429 Pa.Super. 158, 631 A.2d 1335 (1993), appellant contends the case is not controlling as it was decided under the federal constitution and not the Pennsylvania Constitution which affords greater protection to individuals.

■ Recent case law has drawn an analogy between the warrantless seizure of contraband in plain view of a police officer conducting a *Terry* search and when an officer discov-

ers the contraband through his sense of touch. *Minnesota v. Dickerson,* 508 U.S. ——, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); *Johnson, supra,* 429 Pa.Super. at 158, 631 A.2d 1335. The "plain view" doctrine allows such a seizure if the contraband is observed by a police officer from a lawful vantage point, is in plain view and its incriminating character is immediately apparent. By analogy the United States Supreme Court in *Dickerson, supra,* and this Court in *Johnson, supra,* held:

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.

*Id.* at 166, 631 A.2d at 1339–40, *citing Dickerson, supra* (footnote omitted).

Here, the arresting officer testified his tactile impression combined with his years of training and experience as a police officer, in addition to the surrounding circumstances, led him to reasonably conclude that what he felt was a controlled substance (N.T., 8/10/93, pp. 38–40). "Where it is 'immediately apparent' from the tactile impression that the suspect possesses contraband on his person, a seizure of the contraband is justified." *Johnson, supra,* citing *Dickerson, supra.* Accordingly, we find the seizure did not violate appellant's rights under the fourth amendment.

■ Appellant further contends *Johnson* is not controlling since it was not decided under the Pennsylvania Constitution which requires this Court to reject the "plain touch" doctrine. Initially, we note that appellant's reliance upon *Marconi, supra,* is misplaced. First, in deciding *Marconi* under the federal constitution, this Court acknowledged our State Constitution as well. *Id.* at 603, 597 A.2d 617 n. 1. Secondly, in *Marconi,* we determined "the minute amount of drugs that was found on Marconi's person could not have been identified

through the sense of touch." *Id.* at 615, 597 A.2d at 623. Thirdly, this Court expressly overruled *Marconi* insofar as it is inconsistent with *Dickerson. In the Interest of S.D.,* 429 Pa.Super. 576, 584, 633 A.2d 172, 176 n. 3 (1993).

After a thorough review of appellant's brief, we find that it lacks, beyond bold assertions, any detailed analysis as to a distinction between the federal constitution and our state constitution in regard to the "plain touch" doctrine. In *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991), our Supreme Court delineated four aspects of any claimed distinction between the constitutions which must be analyzed in order to demonstrate why the Pennsylvania Constitution should be interpreted differently. Although appellant briefly has mentioned these aspects, he has failed to undertake any analysis of them. He simply argues Pennsylvania may adopt a state constitution which imposes greater limitations than those imposed by the federal constitution. Under these circumstances it would be inappropriate for this Court to conduct an in-depth analysis as to the distinction between the constitutions.

However, a cursory review of the doctrine reveals no greater privacy interests would be advanced for the citizen of this Commonwealth by holding Article 1, Section 8 of the Pennsylvania Constitution does not support the "plain touch" doctrine. In order for this doctrine to apply, an individual must already be lawfully stopped and subject to a lawful *Terry* frisk by the police officer. "Plain touch" merely permits the officer to invoke probable cause to search during this frisk as the result of his sense of touch coupled with the surrounding circumstances and his personal knowledge, experience and common sense. Rejecting this doctrine under the Pennsylvania Constitution would not prevent individuals from being stopped and frisked, nor would it eliminate any touching to which they are already subject. Rejection of the doctrine would merely require an officer to ignore that which, as the result of training, experience and common sense, is known to be contraband. The inherent protection within the doctrine is contained in the requirement that it must be "immediately

apparent" the object felt is contraband. Accordingly, it is unnecessary to reject the "plain touch" doctrine to protect the privacy of the citizens of this Commonwealth, since the doctrine, by its own restrictions, provides that protection.

Judgment of sentence affirmed.

McEWEN, J., concurs in the result.

Dissenting opinion by FORD ELLIOTT, J.

FORD ELLIOTT, Judge, dissenting.

I must respectfully dissent. I believe that the majority has applied the so-called "plain feel" or "plain touch" doctrine in a manner clearly prohibited by the United States Supreme Court.

Preliminarily, in order to better highlight our differences, I note that I am in agreement with the majority on two important matters. First, I agree that appellant's brief is inadequate under the strictures of *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991). Therefore, we may not embark upon a separate analysis of appellant's claims pursuant to the Pennsylvania Constitution. Our only review is pursuant to the Fourth Amendment of the United States Constitution. Second, I agree that the analysis under federal constitutional principles leads to the conclusion that the police properly effected a *Terry* [1] stop and frisk of appellant. Thus, I concur that the frisking officer was in a constitutionally permissible vantage point when he first felt the contents of appellant's pocket. Where I fundamentally differ with the majority is in allowing the officer to proceed further and actually reach into appellant's pocket pursuant to the "plain feel" doctrine.

As the Supreme Court explained in *Minnesota v. Dickerson,* 508 U.S. ——, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the plain feel doctrine is akin to the plain view doctrine. Under that latter doctrine, if contraband is left in open view and a police officer in a constitutionally permissible vantage point observes it, it may be seized and used as evidence because

1. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

there has been no invasion of a legitimate expectation of privacy and thus no prohibited seizure under the Fourth Amendment.

Extrapolating from the plain view doctrine, the Supreme Court held in *Minnesota v. Dickerson* that where the police are in a legal *tactile* vantage point, that is, during a *Terry* frisk, and the nature of contraband held by the suspect becomes "immediately apparent" through the sense of touch, then the police may constitutionally seize the contraband. Nevertheless, the court stressed that the nature of the contraband must, indeed, be immediately apparent and that no further manipulation of the suspect article is permissible:

> The Minnesota Supreme Court, after 'a close examination of the record,' held that the officer's own testimony 'belies any notion that he "immediately" ' recognized the lump as crack cocaine. See [State v. Dickerson], 481 NW2d [840], at 844 [ (1992) ]. Rather, the court concluded, the officer determined that the lump was contraband only after 'squeezing, sliding and otherwise manipulating the contents of the defendant's pocket'—a pocket which the officer already knew contained no weapon. Ibid.
>
> Under the State Supreme Court's interpretation of the record before it, it is clear that the court was correct in holding that the police officer in this case overstepped the bounds of the 'strictly circumscribed' search for weapons allowed under Terry. See *Terry*, 392 US. [1], at 26, 20 LEd2d 889, 88 SCt 1868, [at 1882–1883]. Where, as here, 'an officer who is executing a valid search for one item seizes a different item,' this Court rightly 'has been sensitive to the danger ... that officers will enlarge a specific authorization, furnished by a warrant or an exigency, into the equivalent of a general warrant to rummage and seize at will.' *Texas v. Brown*, 460 US [730], at 748, 75 LEd2d 502, 103 SCt 1535 [at 1546–1547 (1983) ] (Stevens, J., concurring in judgment). Here, the officer's continued exploration of respondent's pocket after having concluded that it contained no weapon was unrelated to '[t]he sole justification of the search [under Terry:] ... the protection of the police officer

and others nearby.' 392 US [1], at 29, 20 LEd2d 889, 88 SCt 1868, [at 1884]. It therefore amounted to the sort of evidentiary search that Terry expressly refused to authorize, see *id.* [392 U.S. 1] at 26, 20 LEd2d 889, 88 SCt 1868, [at 1882–1883], and that we have condemned in subsequent cases. See *Michigan v. Long,* 463 US [1032], at 1049, n 14, 77 LEd2d 1201, 103 SCt 3469 [at 3480–3481 (1983) ]; *Sibron [v. State of New York],* 392 US [40], at 65–66, 20 LEd2d 917, 88 SCt 1889, [at 904· (1968) ].

*Minnesota v. Dickerson,* 508 U.S. at ——, 113 S.Ct. at 2138–2139, 124 L.Ed.2d at 347–348.

Based on this rationale by the Supreme Court, I find the admission of the evidence below, predicated on the plain feel doctrine, to be infirm. It is clear from the record that the officer did not determine, by mere sense of touch, the contents of appellant's pocket. Rather, his conclusion was not "immediately apparent," but required further manipulation conjoined with the officer's experience and the surrounding circumstances. I begin with a review of the frisking officer's testimony:

[DISTRICT ATTORNEY:] And how did you conduct that pat down?

[DETECTIVE AZPELL:] I did a typically [sic] pat down search starting at the shoulders and working down, now he's laying and his arms are outstretched in front of him. The first thing I felt was a pager on his belt.

[DISTRICT ATTORNEY:] And where was that located?

[DETECTIVE AZPELL:] I believe it was on the right side.

[DISTRICT ATTORNEY:] Okay.

[DETECTIVE AZPELL:] As I came down, I felt a lump in his left pocket, and when I got—when I was coming down on the right side, I felt something bulky but it was—I could feel things and hear like a crunching noise when I squeezed it. I ...

[DISTRICT ATTORNEY:] Detective, how long have you been involved in narcotics work?

[DETECTIVE AZPELL:] About five years.

[DISTRICT ATTORNEY:] And how long as a law enforcement officer generally?

[DETECTIVE AZPELL:] Fourteen years.

[DISTRICT ATTORNEY:] And had you felt that type of a feel before?

[DETECTIVE AZPELL:] Yes.

[DISTRICT ATTORNEY:] Have you been engaged in narcotics investigations in the past?

[DETECTIVE AZPELL:] Yes.

[DISTRICT ATTORNEY:] Had you made street narcotics arrests in the past?

[DETECTIVE AZPELL:] Yes.

[DISTRICT ATTORNEY:] Had you dealt with informants in the past?

[DETECTIVE AZPELL:] Yes.

[DISTRICT ATTORNEY:] Had you gained knowledge regarding the packaging and distribution methods of marijuana and cocaine?

[DETECTIVE AZPELL:] Yes.

[DISTRICT ATTORNEY:] Had you seen packaging of marijuana in the past?

[DETECTIVE AZPELL:] Yes.

[DISTRICT ATTORNEY:] Based on what you—had you attended seminars and educational classes regarding sales and packaging of drugs?

[DETECTIVE AZPELL:] Yes.

[DISTRICT ATTORNEY:] And based on what you felt, what did you believe you felt?

[DETECTIVE AZPELL:] I believed what I was feeling was a bag of dope. But then when I reached down, I could see part of the bag sticking out—the plastic bag was actually sticking out of his pocket.

[DISTRICT ATTORNEY:] Could you see any contents of that bag at that point?

[DETECTIVE AZPELL:] No. I could just see the plastic.

[DISTRICT ATTORNEY:] Now, that was in what pocket? Jacket, pants?

[DETECTIVE AZPELL:] Pants pocket. Right pants pocket.

[DISTRICT ATTORNEY:] And when you saw that plastic sticking out, what did you believe at that point?

[DETECTIVE AZPELL:] I believed then what I felt was a bag of drugs. Dope.

[DISTRICT ATTORNEY:] Had you in the past observed narcotics of various types packaged in plastic?

[DETECTIVE AZPELL:] Hundreds if not thousands of times.

Notes of testimony, 3/2/93 at 62–64.

Relying on this testimony, the majority finds that, "[p]lain touch' merely permits the officer to invoke probable cause to search during [a *Terry*] frisk as the result of his sense of touch coupled with the surrounding circumstances and his personal knowledge, experience and common sense." However, this is *not* how the *Minnesota v. Dickerson* court envisioned the operation of the plain feel exception.

Essentially, the majority has considered factors extrinsic to the tactile sense of the frisking officer such as the surrounding circumstances of the frisk and/or the personal knowledge and experience of the officer. The Supreme Court did not consider such factors in *Minnesota v. Dickerson*, and instead clearly delimited a very restrictive test rather than the expansive version espoused by the majority. This is not surprising given that the Supreme Court regards the plain feel exception as an offshoot of the plain view exception. The court stated, concerning the plain view doctrine:

Under that doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. If, however, the police lack probable cause to believe that an object in plain view is contraband without conducting some

further search of the object—i.e., if 'its incriminating character [is not] "immediately apparent," '—the plain-view doctrine cannot justify its seizure.

*Minnesota v. Dickerson,* 508 U.S. at ——, 113 S.Ct. at 2136–2137, 124 L.Ed.2d at 345 (citations omitted, bracketed matter in original).

It is interesting to note that the extrinsic factors in *Minnesota v. Dickerson* are similar to those found instantly. There, the police arrived at the scene of a "notorious crack house," a twelve unit apartment building in Minneapolis, armed with several search warrants for the premises. Upon arriving, they observed the defendant leave the building and begin walking toward them. However, when the defendant spotted the squad car and made eye contact with one of the officers, he abruptly halted and began walking in the opposite direction. The police then stopped the defendant and conducted a *Terry* frisk. As the officer testified:

'[A]s I pat-searched the front of his body, I felt a lump, a small lump, in the front pocket. I examined it with my fingers and it slid and it felt to be a lump of crack cocaine in cellophane.' Tr 9 (Feb. 20, 1990).

*Minnesota v. Dickerson,* 508 U.S. at ——, 113 S.Ct. at 2133, 124 L.Ed.2d at 341. Rejecting this type of manipulation by the officer to confirm his beliefs, and ignoring the surrounding circumstances leading to the search, the Supreme Court crafted a very restrictive, objective test for invoking the plain feel doctrine. Simply put, the nature of the contraband contained on a suspect's person must be "immediately apparent" based on the officer's sense of touch and absent any sort of manipulation.

Like the police officer in *Minnesota v. Dickerson,* the officer in the matter before us was reasonable in suspecting that criminal activity might be afoot, based upon the surrounding circumstances and his personal knowledge and experience, and was entitled to conduct a protective *Terry* frisk for weapons. However, he was not justified in manipulating the object which he felt in appellant's pocket, to confirm his suspicion

that it was contraband. I find that he violated the confines of the strictly circumscribed search for weapons under *Terry*, and in so doing, the search "therefore amounted to the sort of evidentiary search that *Terry* expressly refused to authorize." *Minnesota v. Dickerson*, 508 U.S. at ——, 113 S.Ct. at 2139, 124 L.Ed.2d at 347.

According to the testimony, when the officer first patted appellant's pocket, all he felt was "something bulky." Only after the officer "squeezed it" was he able to assess the contents. However, it was this very sort of manipulation, this squeezing, that caused the United States Supreme Court to rule in *Minnesota v. Dickerson*, that the police search exceeded the bounds of *Terry*. Although the court recognized the plain feel doctrine, it specifically found that manipulating or squeezing the object in the suspect's pocket went beyond the confines permitted under *Terry*.

Finally, I find that the case chiefly relied upon by the majority, *Commonwealth v. Johnson*, 429 Pa.Super. 158, 631 A.2d 1335 (1993), is distinguishable. I will concede that the *Johnson* court combined the officer's tactile impression with the surrounding circumstances and his personal knowledge and experience in order to justify the plain feel seizure. However, it is clear that the majority relied heavily on the officer's testimony that there was no need for manipulation and that the nature of the object was "immediately apparent":

> Here, the officer articulated in detail regarding the specific nature of his perception. The record is, therefore, sufficient to establish that the officer's tactile impression combined with his years of experience, led him to reasonably conclude that what he felt was controlled substance. The perceived consistency and location of the package [in Johnson's crotch] together with surrounding circumstances combined sufficiently to betray the illegal nature of the object on appellee's person. *Compare Commonwealth v. Marconi, supra,* 408 Pa.Super. 601, 597 A.2d 616 (rock or pebble like object in pocket not sufficiently identifiable through tactile impression). There was no need to manipulate the object, or alter in any way the justified pat-down, in order to identify the

contraband. Rather, the identity of the cocaine became 'immediately apparent' through only a minimally intrusive and constitutionally permissible pat-down....

*Commonwealth v. Johnson,* at 168, 631 A.2d at 1340–41 (citation to notes of testimony and footnote omitted).

Accordingly, I would suppress the evidence instantly and must dissent from the majority's failure to do so.