**Commonwealth v. Long**

*Laura Siegle,* for Commonwealth.
*Kenneth B. Hone,* for defendant.

RUFE, *J.,* September 12, 2008—Defendant, John Long, has filed an appeal in this matter. The four matters raised on appeal pertain to issues addressed before this court during a suppression hearing conducted on January 30-31, 2008. A waiver trial was heard by this court on March 11, 2008, and defendant was found guilty of possession with intent to deliver cocaine and Xanax.[1] Sentencing occurred on May 5, 2008, at which time defendant received the mandatory minimum sentence of three to six years at a state correctional facility. The instant appeal followed.

Pursuant to Pa.R.A.P. 1925(b) appellant filed a concise statement of matters complained of on appeal. The matters raised are as follows:

(1) The lower court erred in failing to suppress the physical evidence, as law enforcement violated the plain touch doctrine.

(2) There was no probable cause to justify the arrest of appellant and to validate the search of his person.

---

1. 35 P.S. §780-113(a)30.

(3) The lower court erred in finding that appellant's statement at the police station was not the direct product of the illegal arrest and/or *Terry*[2] stop. As such, the statement was tainted by the illegal police conduct. There was no independent basis to justify the admission of the statement.

(4) Appellant believes that the lower court suppressed the statements taken at the time of the vehicle stop; however, if that was not the case, the lower court erred, as the statements were given as a result of police questioning.

## FACTUAL BACKGROUND

The factual history is largely taken from the testimony of Officer Stephen Sanocki who was on patrol in a marked car, in the area of Route 413 in Bristol Township, during the evening of this incident. On July 25, 2007, a 911[3] call was placed from the Eckerd drugstore, at the Commerce Center, at Routes 13 and 413, in Bristol Township, Bucks County, Pennsylvania. It was reported that three cartons of cigarettes were stolen. Information provided by the victims advised the individual involved was a white male, estimated to be in his twenties, who fled

---

2. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

3. Two 911 tapes were played for the court. The authenticity and admissibility of the tapes were stipulated to before the court. The first tape is a recording from the Bucks County Radio Room and reflected a call made between 6:16 and 6:18 in the evening on July 25, 2007. The second recording reflects a call made between 6:38 p.m. and 6:43 p.m. on July 25, 2007 of the radio transmission as recorded by the Bucks County Radio Room, Department of Emergency Communications. (N.T. 1/30/2008, pp. 4-5.)

in a car identified as a red Neon. It was reported that a driver was waiting in the car to flee. (N.T.1/31/08, pp. 52-53.)

The Bristol Township and Bristol Borough police departments were alerted to the call. Officer Sanocki testified that the first 911 call he responded to was an abandoned call. He then continued back onto Route 413 when the second 911 call came in from an Eckerd employee stating they had spotted a red Neon, believed to be involved in this retail theft, behind Dunlops Bar. (N.T. 1/30/08, p. 9.)

Officer Sanocki testified he was patrolling in that area and heard the radio transmissions. When the vehicle was not found by a Bristol Borough officer who had reported to that location, Officer Sanocki intended to check Just Sports Bar, across the street from Dunlops Bar. En route, Officer Sanocki witnessed a red Neon, driven by a white male, alone in the vehicle. The vehicle made a U-turn on Route 413, going from southbound to northbound, which could have given the vehicle access to the I-95 interstate highway. (N.T. 1/30/08, pp. 7, 9, 11.) "The police, the officers that were down at the sports bar, said there were no vehicles there. So I'm thinking this could be our vehicle." (N.T. 1/30/08, p. 11.) Officer Sanocki turned on his lights and attempted to make a U-turn to check on the Neon.

Officer Sanocki testified when he initiated the stop that the driver seemed nervous and did not have a driver's license. Officer Sanocki observed baby formula, a carton of Newport cigarettes and various colored T-shirts on the floor of the back seat. Officer Sanocki immediately ra-

dioed to confirm the type of cigarettes stolen from Eckerd and was informed they were Newport cigarettes. (N.T. 1/30/08, pp. 12-14.)

The officer testified and the court takes judicial notice that baby formula and cigarettes are commonly theft items from commercial establishments because they are readily convertible into cash and the cash then used for the sustenance of drug habits for various drug-addicted persons. The existence of those items in the red vehicle, and the operation by the white male identified as the defendant generated a reasonable suspicion on the part of the officer that criminal activity was afoot and that the defendant was the perpetrator of the theft. (N.T. 1/31/08, p. 56.)

Defendant responded to the officer that he was not in possession of anything illegal and did not have any contraband. He permitted the officer to search the vehicle. Because defendant was out of the vehicle, Officer Sanocki patted him down. (N.T. 1/30/08, p. 15.) By this time there were three additional officers from the Bristol Township Police Department at the scene. (N.T. 1/31/08, p. 14.) A pat-down search of defendant's clothes revealed a bulge which the officer perceived to be a film container. Upon feeling the container pursuant to a *Terry*-type search, becoming suspicious that it might contain contraband, Officer Sanocki asked defendant if he owned a 35mm camera, to which defendant responded he did not. (N.T. 1/31/08, pp. 15-16.) The officer testified, "in my experience I know that 35-millimeter film canisters are quite often used to carry marihuana in. And so I had suspicion that he was holding some marijuana. And then

as I reached into his pocket to pull out this canister, Mr. Long blurted out a statement and said that he was going to jail for a long time. And then what I pulled out of his pocket was actually a pill bottle the name on it was not John Long; it was the name of Joseph Marcino they were actually two types of pills in that canister I also felt in his pocket a cellophane wrapper with a chucky substance inside it. And when I pulled that out is when I saw the chunky white substance." (N.T. 1/30/08, p. 16.)

Employees from Eckerd arrived at the scene and advised that defendant was not the perpetrator from the theft at that store. As the employees of the drugstore did not identify defendant as the perpetrator from that store, Officer Sanocki no longer had a reasonable suspicion that defendant had committed that theft. However, the officer had probable cause to arrest defendant on the basis of possession of the controlled substance.

Defendant was taken to the station, *Mirandized,* and agreed to speak to the police without an attorney.

The container with two types of pills and the cellophane package of a chunky white substance were placed in front of defendant and he was interrogated and acknowledged that he was in possession of cocaine, that he was not a user, and that he sold illegal substances in Philadelphia, not Bucks County. (N.T. 1/30/08, pp. 17-20.)

The matters raised on appeal are all related to the suppression hearing conducted on January 30 and 31, 2008. It is exclusively the province of the suppression court to determine the credibility of the witnesses and weight to be accorded to their testimony. *Commonwealth v. Dorsey,* 439 Pa. Super. 494, 654 A.2d 1086 (1995).

Addressing the matter complained of, that the plain touch doctrine was violated, the Pennsylvania Superior Court has held that when a police officer is confronted with someone whom he reasonably believes is involved in narcotics traffic, a *Terry* pat-down frisk for protection of the officer is proper. *Commonwealth v. Patterson,* 405 Pa. Super. 17, 591 A.2d 1075 (1991). For the plain touch doctrine to apply, an individual must already be lawfully stopped and subject to a lawful *Terry* frisk by the police officer. Plain touch merely permits the officer to invoke probable cause to search during this frisk, as the result of his sense of touch, coupled with the surrounding circumstances and his personal knowledge, experience and common sense. *Dorsey, supra.* We found Officer Sanocki's actions justified under the plain touch doctrine and therefore did not suppress the physical evidence. We found, from the facts recited, as follows:

"That Officer Sanocki had a reasonable suspicion and probable cause—had a reasonable suspicion to stop the vehicle based upon the reports of theft of cigarettes and had a reasonable suspicion to ask the defendant out of the vehicle to make a *Terry* search for his safety. That at the time of the *Terry* search, the defendant was sufficiently restricted from leaving the scene, that he was effectively under arrest

"We conclude further that the officer had probable cause to make an arrest and to conduct a pat-down search, and that items seized as a result of the pat-down search or the search of the vehicle were validly obtained and are not to be suppressed at trial . . .

"We find that the officer had a reasonable suspicion upon feeling what he thought to be a film canister, that the film canister contained contraband substance, and that the arrest as a result of feeling the contraband substance was a valid arrest and lawful arrest." (N.T. 1/31/08, pp. 60-63.)

Furthermore, and in response to the second matter complained of on appeal, this court found there was probable cause to justify the arrest of appellant and to validate the search of his person. Pennsylvania has adopted the totality of the circumstances analysis to determine whether probable cause for an arrest exists. *Commonwealth v. Clark,* 558 Pa. 157, 735 A.2d 1248 (1999). Probable cause must be viewed from the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of the arrest, guided by his or her experience and training. *In re R.P.,* 918 A.2d 115 (Pa. Super. 2007), citing *Clark, supra.* On the record we stated:

"We have taken into consideration the various factors that the court must take into consideration in a determination whether the nature of the confrontation by the police with the defendant were at the level of a mere encounter, were an investigative detention, or were as a result of the arrest

"We take into consideration the defendant's apparent nervousness, the fact that he and the vehicle fit the description that were described to the police by police radio. We take into consideration the fact that the source of the complaint was identified. We take into consideration the need for the officer's protection in conducting a *Terry*

search as a result of the probable cause that he had to make the arrest for the theft.

"We find that the officer had a reasonable suspicion upon feeling what he thought to be a film canister, that the film canister contained contraband substance, and that the arrest as a result of feeling the contraband substance was a valid arrest and lawful arrest.

"Although the defendant as the driver of the vehicle could not be connected to the theft, and although the pill bottle was misidentified by the officer as a film canister, nevertheless, his suspicions were reasonable and his probable cause to make the arrest based upon the information available to him was valid." (N.T. 1/31/08, pp. 62-63.)

The court found that the fact that there was only one person in the vehicle and that only one carton of cigarettes was located in the vehicle did not minimize the level of suspicion which Officer Sanocki had or should have had or could have had as a result of undertaking the stop of the red Neon, and that the absence of a second person is not necessarily inconsistent with the suspicion that Officer Sanocki had that the vehicle was involved in the theft. (N.T. 1/31/08, p. 59.)

With regard to the third and fourth matters complained of on appeal, we refer to this court's order of February 27, 2008,[4] attached as exhibit A hereto. In that order, upon reconsideration, we found the statement made by defendant during the motor vehicle stop was not entitled to protection, since Officer Sanocki had asked no ques-

4. This order should read February 27, 2008, (not 2007) as it pertains to a motion re reconsideration following our January 31, 2008 (not January 21, 2008) ruling.

tion designed to cause defendant to make a statement that was either incriminatory or exculpatory. The Pennsylvania Supreme Court has repeatedly held that statements by defendants which are not in response to any questioning or action by the officer are admissible without *Miranda* warnings. *Commonwealth v. Baez,* 554 Pa. 66, 85, 720 A.2d 711, 720 (1998). Furthermore, because that statement was found admissible we held there was no applicability of doctrine of the fruit of the poisonous tree, and ordered that the statement taken from defendant at the police station after he was *Mirandized* was admissible as well. We stated additionally, that even if the statement at the scene were inadmissible, no fruit of the poisonous tree doctrine would apply, and the failure to warn defendant at the scene would not vitiate the statement given at the police station after *Miranda* warnings were given. See *Commonwealth v. Hess,* 446 Pa. Super. 222, 666 A.2d 705 (1995).

Based on our findings, the plain touch doctrine was not violated and there existed ample probable cause for defendant's arrest. Furthermore, those findings as well as our subsequent order of February 27, 2008, render the third and fourth matters complained of on appeal moot.

---

## EXHIBIT A

## ORDER

And now, February 27, 2007, [sic] upon reconsideration of our order of January 21, 2008, [sic] in which we suppressed the statement of defendant at the scene of the

traffic stop on the basis that the police officer should have warned defendant of his *Miranda* rights, and that failure to do so justified the suppression of the volunteered statement, we believe the statement by the defendant was not entitled to protection, since the officer asked defendant no questions designed to cause defendant to make a statement either incriminatory or exculpatory. We therefore sustain the motion for reconsideration and hereby order that the statement of defendant at the scene of the arrest be admissible at trial.

Because we find the statement of the defendant to be admissible, we further find that no doctrine of the fruit of the poisonous tree is applicable, and we order that the statement taken from defendant at the police station after he was *Mirandized* be admissible as well.

Finally, we will state that even if the statement at the scene was inadmissible, no fruit of the poisonous tree doctrine would apply, and that the failure to warn the defendant at the scene would not vitiate the statement given at the police station after *Miranda* warnings were given. See *Commonwealth v. Hess,* 446 Pa. Super. 222, 666 A.2d 705 (1995).