## Commonwealth v. Crawford

*Jonathan Birbeck, assistant district attorney,* for the Commonwealth.

*Taylor P. Andrews, chief public defender,* for defendant.

HESS, *J.,* October 21, 1992—This is a case in which the defendant seeks to suppress a quantity of crack cocaine seized from his person by Detective David R. Fones of the Carlisle Police Department. Based on the testimony adduced at our recent suppression hearing, we find the facts to be as follows:

Detective Fones received a phone call from a person whose voice he identified as being that of a person who had given him reliable investigative information on prior occasions.* The caller stated that he had personally seen

---

\* The precise number of times is unknown. The most that the officer could say was that it was more than once. Since the date of this incident, January 10, 1992, Detective Fones has come to know the informant by name and has received reliable information from him between five and ten times. Officer Fones' contact with the informant after the search sub judice is, of course, irrelevant to the disposition of the instant motion.

the defendant make several drug transactions. He identified the defendant's location and described what Mr. Crawford was wearing. The caller identified the defendant by name and stated that the drugs which he was selling were in his jacket pocket. The area indicated by the caller was known as a heavy drug trafficking area and the defendant was known to the detective as a suspected drug dealer. Detective Fones arrived at the area indicated by the caller approximately six minutes after the telephone call and saw Mr. Crawford on the sidewalk with his father. The coat which the defendant was wearing matched the description given by the caller. As Detective Fones approached the defendant he began walking away. Detective Fones briefly pursued the defendant, caught him and handcuffed him. Immediately thereafter, the detective retrieved a plastic bag containing crack cocaine from the defendant's coat pocket.

To summarize, this is a case where the police acted on information received from a person whom they believed to be reliable. As a result of this information, the police proceeded to an area known for the unlawful distribution of drugs and there observed the defendant, known to them as a drug dealer. When they sought to approach the defendant, he began walking away. The standard for evaluating whether probable cause exists is based upon the "totality of the circumstances." *Illinois v. Gates,* 462 U.S. 213 (1983), adopted by the Pennsylvania Supreme Court in *Commonwealth v. Gray,* 509 Pa. 476, 503 A.2d 921 (1985). Were the decision entirely ours to make, we would have little hesitation in concluding that the search by Officer Fones was supported by the totality of the circumstances. We do not believe that the current state of appellate case law, however, permits us to reach this result. To the contrary, we are constrained to conclude that existing appellate precedent requires suppression in this case.

In light of the holding of the Superior Court in *Commonwealth v. Smith*, 396 Pa. Super. 6, 577 A.2d 1387 (1990), *alloc. denied*, 527 Pa. 610, 590 A.2d 296 (1991), and the holding of the U.S. Supreme Court in *Alabama v. White*, 496 U.S. 325 (1990), we are satisfied that Officer Fones was justified in detaining the defendant, Crawford, for the purpose of investigation. In *Smith*, Officer John Finnegan of the Chester City Police Force received a telephone call from a paid informant with whom he had an ongoing relationship. The informant advised Finnegan that he had just observed a black male selling cocaine in the area of 10th and McCafferty Streets in the city of Chester. He described the clothing worn by the suspect. That area was known to the officers of the Chester City Police Department as a high crime and drug trafficking area. Eventually, several Chester city police officers deployed themselves around the area of 10th Street and McCafferty Place. One Detective Greenwalt observed the defendant, Smith, wearing the clothing described by the informant. A number of other persons were in the area. When the defendant observed the presence of some of the police officers moving toward him, he began to walk away looking over his shoulder. He was stopped by Detective Greenwalt who described the defendant's demeanor as "real nervous." Feeling that Smith was about to run away, Greenwalt grabbed him by the elbow and over his protestations, patted him down for weapons. He felt a hard bulge in defendant's pocket, reached into his clothing and found plastic bags containing drugs, $163 in currency and a roll of lifesavers. The court analyzed the situation as follows:

"Our examination of the conduct of the police must follow two separate inquiries: (1) the legality of the initial

stop; and (2) the propriety of the officers' subsequent actions. *Commonwealth v. Jackson*, 359 Pa. Super. 433, 519 A.2d 427 (1986). To justify the initial stop, a police officer must rely on specific and articulable facts, which if taken together with rational inferences from those facts, reasonably warrant that intrusion. *Commonwealth v. Pine*, 370 Pa. Super. 410, 536 A.2d 811 (1988), *Jackson, supra*....

"The search or frisk incident to an investigatory stop must meet a higher threshold of justification. A police officer may legitimately search an individual's clothing in an attempt to discover the presence of weapons which might be used to endanger the officer or others if the officer observes unusual and suspicious conduct on the part of the individual seized which leads him to conclude that criminal activity is afoot and that the person with whom he is dealing may be armed and dangerous. *Commonwealth v. Hicks*, 434 Pa. 153, 253 A.2d 276 (1969)." *Id.* at 10, 577 A.2d at 1389.

The circumstances in *Smith* are similar to the factual precis in this case. Police received information from a confidential informant who had been reliable in the past. The defendant was present in a high crime area and the defendant acted suspiciously upon observing the police. These circumstances combine to form the basis for an *investigatory stop*. Applying general "stop and frisk" principles as first announced in *Terry v. Ohio*, 392 U.S. 1 (1968), the Superior Court, in *Smith*, went on to discuss the investigatory stop as one which sets the stage for a pat down. The pat down, in turn, justified further search when the officer encounters something which may be a weapon.

In *Alabama v. White, supra*, police received an *anonymous* tip that White would be leaving a particular apart-

ment at a particular time in a particular vehicle and that she would be going to a particular motel. The informant also indicated that she would be in possession of cocaine. The police immediately proceeded to the apartment building which was the subject of the call, observed the vehicle matching the caller's description and saw White as she left the building and entered the vehicle. They followed her along the most direct route to the motel in question, stopping her vehicle just short of the motel. White, thereafter, consented to the search of her vehicle resulting in the seizure of marijuana and cocaine. Calling it a "close question," the U.S. Supreme Court concluded that the totality of the circumstances demonstrated that significant aspects of the informant's story were sufficiently corroborated to furnish the kind of reasonable suspicion which justified an investigatory stop.

Detective Fones, at the suppression hearing in the instant case, described his detention of the defendant as an investigatory stop. We agree with the Commonwealth that it was one which Officer Fones was authorized to make. It is what happened after the investigatory stop of the defendant, however, which poses the problem in this case. In all of the cases which we have been able to discover, the investigatory stop has served as a lawful basis for a pat down or consent search. The case of *Adams v. Williams,* 407 U.S. 143 (1972), represented one departure from the requirement that there be a pat down prior to a seizure. The facts of that case were summarized in the Lawyer's Edition Syllabus as follows:

"Acting on a tip supplied moments earlier by an informant known to him, a police officer asked respondent to open his car door. Respondent lowered the window, and the officer reached into the car and found a loaded handgun (which had not been visible from the outside)

in respondent's waistband, precisely where the informant said it would be. Respondent was arrested for unlawful possession of the handgun. A search incident to the arrest disclosed heroin on respondent's person (as the informant had reported), as well as other contraband in the car. Respondent's petition for federal habeas corpus relief was denied by the District Court. The Court of Appeals reversed, holding that the evidence that had been used in the trial resulting in respondent's conviction had been obtained by an unlawful search.... As *Terry v. Ohio,* 392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868, recognizes, a policeman making a reasonable investigatory stop may conduct a limited protective search for concealed weapons when he has reason to believe that the suspect is armed and dangerous. Here the information from the informant had enough indicia of reliability to justify the officer's forcible stop of petitioner and the protective seizure of the weapon, which afforded reasonable ground for the search incident to the arrest that ensued." 32 L.Ed.2d 612, 615 (1972).

The search in *Williams* was a "limited protective search for concealed weapons" by an officer who had "reason to believe that the suspect is armed and dangerous."

In the matter sub judice, there was no indication of any likelihood that Crawford was armed or that the search was one for weapons. We know of no authority for an immediate seizure of contraband from the clothing of an individual, pursuant to an investigatory detention, where the quantum of information available to the police has fallen short of probable cause. In fact, the law is to the contrary. *Commonwealth v. Marconi,* 408 Pa. Super. 601, 597 A.2d 616 (1991). Because we can find

no Pennsylvania authority dealing with facts similar to those sub judice in which an immediate seizure and search of the person was authorized, we are compelled to suppress the evidence in this case.

ORDER

And now, October 21, 1992, the motion of the defendant to suppress evidence is granted.