589 A.2d 1119

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Steven L. KLINEDINST, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 12, 1990.

Filed April 12, 1991.

606

Frank C. Arcuri, York, for appellant.

Christy H. Fawcett, Asst. Dist. Atty., Hanover, for Com., appellee.

Before CAVANAUGH, POPOVICH and BROSKY, JJ.

POPOVICH, Judge:

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of York County, following appellant's conviction on two counts of possession of a controlled substance with intent to deliver. On appeal, appellant, Steven Klinedinst, questions whether the search warrant for his home was issued upon probable cause. Appellant also inquires whether the trial judge erred in allowing the prosecutor to comment improperly on incoming phone calls and render her opinion as to the reasons those calls were made. Having reviewed the record and the parties' briefs, we find that the search warrant in question was based upon probable cause. However, we find that the prosecutor did improperly comment upon certain telephone calls, and the trial judge did in fact err in permitting said comments. Thus, we reverse and remand for a new trial.

The record reveals the search of appellant's residence was made pursuant to a warrant obtained by Trooper Mervin Hill of the Pennsylvania State Police. On December 23, 1988, Trooper Hill applied for the warrant to search appellant's residence and submitted the following affidavit of probable cause in support of the warrant application:

1. On 12/13/88, the affiant received a telephone call from Tpr. David Young, Penn. State Police Region II Drug Strike Force, Reading, Penn. Tpr. Young related the following information: Tpr. Young interviewed a confidential informant who stated that one Steven KLINEDINST was involved in the trafficking of marihuana and cocaine, and that Steven KLINEDINST lives on Pomraning Rd. in the southern end of York County. The informant stated that Steven KLINEDINST grows huge quantities of marihuana for distribution, and also receives approx. 12–14 ounces of cocaine from Philadelphia area every few weeks for distribution Tpr. David Young's confidential informant has been inside the residence of Steven L. KLINEDINST and has seen marihuana and cocaine inside the residence. The confidential source also stated that Steven L. KLINEDINST grows the marijuana

and then drys the plants in an adjacent barn located across the road from his residence.

2. On 12/14/88, the affiant proceeded to the area of Pomraning R. Chancefort Twp. in the Brogue area. The affiant observed only one residence fitting the description given by the confidential informant. The affiant observed a run down barn across the road from the residence and obtained a Pennsylvania Registration number off of a vehicle parked in front of the residence, Pa.Reg. UEH–857, which is registered to one Steven L. KLINEDINST, RD# 1, Box 283 Brogue, Penna. 17309. The confidential informant also stated there was a foundation laid to the rear of the KLINEDINST property with no building on top. The affiant did observe what appeared to be a cement block foundation to the rear of this property.

3. On 12/16/88, the affiant conducted surveillance on the Steven L. KLINEDINST property, RD1, Brogue, Pa. and observed a Jeep vehicle with Pa. registration MYP–205 which is registered to Dean B. JOHNSON, RD# 1, Box 219, Brogue Penna. 17309.

4. On 12/22/88, the affiant interviewed the same confidential informant which Tpr. David Young was referring to in paragraph 1 and 2 listed above. The informant advised that one of Steven KLINEDINST's close friend and worker in the marihuana fields is one Dean JOHNSON, also from the Brogue area.. The affiant did not mention DEAN JOHNSON name to the informant, the informant volunteered this information.

5. The confidential informant mentioned in the preceding paragraphs worked for Tpr. Gregory STONE, Penna. State Police, Region III Drug Strike Force in late 1986. As a result of Tpr. STONE working with this same informant, Tpr. STONE arrested and convicted 21 individuals for selling controlled substances in York County.

6. On 12/22/88, Trp. David YOUNG, Region II Strike Force used the same confidential informant mentioned in the preceding paragraphs and as a result of using this

informant's information arrested three (3) individuals for possession with intent to deliver cocaine and confiscated approx. 3 pound of alleged cocaine.

7. In the preceding 48 hours, same confidential informant talked to Dean JOHNSON. Dean JOHNSON advised the informant that Klinedinst at the present time has an ample supply of marihuana and [sic] ready for distribution.

8. The affiant believes this confidential informant to be reliable and truthful. The affiant believes a drug vending operation is being conducted at the residence of Steven L. KLINEDINST, RD# 1, Brogue, Pa. and requests a search warrant.

A search warrant was issued, and, later the same day, a search of appellant's residence uncovered approximately ninety-five grams of cocaine, six grams of marijuana, a large sum of cash and assorted drug paraphernalia.

Appellant filed a pre-trial motion to suppress evidence which alleged the search warrant was not based upon probable cause. The suppression motion was denied. On August 15 and 16, 1989, a jury trial was conducted and resulted in appellant's convictions. Post-trial motions were filed and, subsequently, denied. Appellant was then sentenced to three to six years for possessing cocaine with intent to deliver and a concurrent term of six months to two years for possessing marijuana with intent to deliver. This appeal followed.

In this Commonwealth, the standard for evaluating whether probable cause exists is the "totality of the circumstances" test set forth in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1986). The "totality of the circumstances" test requires the issuing magistrate to make a practical, common sense decision whether, given all the circumstances set forth into the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a

particular place. The reviewing court must then make a common sense determination whether the issuing magistrate had a "substantial basis for ... conclud[ing] that probable cause existed." *Gates,* 462 U.S. at 238–239, 103 S.Ct. at 2332; *Gray,* 503 A.2d at 925; *Commonwealth v. Edmunds,* 526 Pa. 374, —— n. 3, 586 A.2d 887, 891 n. 3 (1991);[1] *Commonwealth v. Melilli,* 521 Pa. 405, 418, 555 A.2d 1254, 1261 (1989); *Commonwealth v. Flaherty,* 400 Pa.Super. 397, 583 A.2d 1175 (1990); *Commonwealth v. Karns,* 389 Pa.Super. 58, 61, 566 A.2d 615, 616 (1989), allocatur denied 525 Pa. 632, 578 A.2d 927 (1990).

■ Appellant contends the information in the affidavit was stale at the time of issuance of the warrant, and, thus, probable cause was not present. Instantly, the reliable informant[2] told the police that he had been inside appellant's residence and had seen marijuana and cocaine inside. The police then waited for ten (10) days before obtaining a search warrant on the basis of this information, and, thus, contends appellant, the informant's statement became stale.

Since a search warrant can only issue upon probable cause that *exists at the time of issuance,* it is necessary to establish the time frame so that the issuing magistrate can insure that the search warrant is not based upon stale information. *Commonwealth v. Stamps,* 493 Pa. 530, 534–537, 427 A.2d 141, 143–144 (1981); *Karns,* 566 A.2d at 617; *Commonwealth v. Haggerty,* 388 Pa.Super. 67, 70, 564 A.2d 1269, 1271 (1989), allocatur denied 525 Pa. 577, 575 A.2d 109 (1990). However, "[m]ere lapse of time between discovery of criminal activity and issuance of the warrant will not necessarily dissipate probable cause; a showing that the criminal activity is likely to have continued up to the time of the issuance of the warrant will render otherwise stale information viable." *Stamps,* 427 A.2d at 141 (citations

---

1. In *Edmunds, supra,* the Supreme Court of Pennsylvania rejected the "good faith" exception to the exclusionary rule as articulated by the United States Supreme Court in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

2. Appellant apparently concedes the reliability of the confidential informant. Appellant's Brief, p. 5, 6.

omitted); *Karns*, 566 A.2d at 617; *Haggerty*, 564 A.2d at 1272.

Presently, the reliable informant told police that appellant grows "huge quantities of marihuana for distribution"; that appellant "drys" his marijuana plants in a barn adjacent to his residence; that appellant receives twelve (12) to fourteen (14) ounces of cocaine from Philadelphia every few weeks for distribution; and that he saw marijuana and cocaine in appellant's house.

Although the police waited for ten days before acting on this tip, the information provided by the informant demonstrates a "fair probability" that criminal activity in the form of marijuana processing was continuing and controlled substances were present on the premises at the time of the issuance of the warrant.

The fact that the police waited ten days before obtaining the warrant does not in and of itself invalidate the warrant. See *Commonwealth v. Klimkowicz*, 331 Pa.Super. 75, 81, 479 A.2d 1086, 1089 (1984) (five weeks between burglary and execution of search warrant does not automatically invalidate warrant; must look to facts to determine reasonableness of conclusion that information was not stale). In *Stamps, supra*, the affidavit reported that the informant had been inside appellant's apartment "within the past 10 days" and had observed the defendant in possession of a large quantity of heroin. The affidavit further revealed possession of large quantities of heroin for sale within fourteen days prior to issuance of the warrant. The *Stamps* court concluded that "the issuing authority reasonably determined appellant was engaged in a continuing course of illegal conduct and that narcotic drugs were likely to be present in his apartment on the day the warrant was issued." Instantly, we reach the same conclusion since the affidavit supports the reasonable conclusion that appellant was engaged in marijuana processing and distribution and street-level distribution of large quantities of cocaine.

In the case *sub judice*, the informant told police that appellant was in the business of growing and drying mari-

juana and distributing large quantities of marijuana and cocaine. A common sense appraisal of this information results in the reasonable conclusion that appellant was involved in an *on-going* drug production and distribution operation since marijuana neither grows nor drys overnight. Although the informant's information was ten days old, there was a fair probability that criminal activity was continuing at the time of issuance. *Cf., Stamps, supra; Karns,* 566 A.2d at 617 (informants' descriptions of on-going operation with a large number of marijuana plants sufficient to overcome failure to demonstrate freshness of information); *Haggerty,* 564 A.2d at 1272 (large quantity of cocaine pointed to a on-going distribution operation conducted over a period of time and currently in progress).

■ Moreover, aside from the information provided via the informant's direct observation, within forty-eight (48) hours prior to issuance of the warrant, the informant told police that Dean Johnson, a friend of appellant who aided appellant in marijuana production, told him that appellant possessed an ample supply of marijuana ready for distribution. At the time this information was related to the police, the police knew that Johnson's automobile had been parked at appellant's residence several days earlier. Contrary to appellant's contention, an affidavit which contains hearsay upon hearsay need not be categorically rejected. Rather, "double hearsay" must be evaluated in conjunction with the other information in the affidavit to determine whether the information is reliable. *Commonwealth v. Casuccio,* 308 Pa.Super. 450, 465, 454 A.2d 621, 629 (1982); *Commonwealth v. Mazzochetti,* 299 Pa.Super. 447, 454, 445 A.2d 1214, 1218 (1982); *United States v. Smith,* 462 F.2d 456, 459 (8th Cir.1972). While this "double hearsay" alone would not be sufficient to create probable cause, this hearsay within hearsay, in conjunction with the informant's direct observations, does give rise to the necessary probable cause.

In sum, viewing the totality of the circumstances, we find that the search warrant was properly issued on the basis of

probable cause as detailed in the affidavit of Trooper Mervin E. Hill, Jr.

Turning to appellant's second assertion of error, we find that the prosecutor did improperly comment upon certain incoming telephone calls and the trial court erred in permitting the commentary. Further, we conclude that the remarks did prejudice the jury against appellant to such an extent as to prevent it from rendering a true verdict. Thus, a new trial is warranted.

Testimony at trial revealed *only* that during the search, several phone calls came into the premises and the callers asked for "Steve," appellant's first name. During her closing remarks, the prosecutor stated: "I am suggesting to you that the telephone calls that were received by the defendant at his house when the police were there and there was testimony from both the defendant and the police officers, that there were some five or six telephone calls received there for Steve, were from people who were ordering drugs from the defendant." (N.T. 336) Despite immediate objection, the trial court allowed the prosecutor's comments to stand without curative instruction.

It is axiomatic that a prosecutor must limit her closing argument to facts and evidence of record and legitimate inferences drawn therefrom. *Commonwealth v. Hardcastle*, 519 Pa. 236, 252, 546 A.2d 1101, 1109 (1988); *Commonwealth v. Lawson*, 519 Pa. 175, 189, 546 A.2d 589, 596 (1988); *Commonwealth v. Adkins*, 468 Pa. 465, 470, 364 A.2d 287, 290 (1976); *Commonwealth v. Fromal*, 392 Pa.Super. 100, 116, 572 A.2d 711, 719 (1990). Instantly, there is absolutely no evidence which would tend to indicate that the telephone calls were drug related. Although a large quantity of controlled substances were confiscated from appellant's residence, it does necessarily follow that everyone or anyone who telephoned appellant was calling in an effort to buy drugs. A myriad of reasons for the calls might exist; however, not one appears in the record. Therefore, the prosecutor's comment that the "five or six telephone calls received there for Steve, were from people

who were ordering drugs from [appellant]" was not a legitimate inference from the evidence of record.

We are cognizant that a "new trial is not mandated every time a prosecutor makes an intemperate or improper remark" and that "[t]o constitute reversible error, the language must be such that its unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility towards the defendant, so that they could not render a true verdict." *Hardcastle,* 546 A.2d at 1109; *Lawson,* 546 A.2d at 596; *Fromal,* 572 A.2d at 719. However, in making her closing remarks, the prosecutor essentially fabricated damning evidence by telling the jury that the telephone calls were made by persons desiring to buy drugs from appellant. Certainly, the prosecutor's unsupported assertion that the telephone calls were drug related formed in the jury's mind a picture of appellant as a drug dealer, independent of the evidence of record. Thus, appellant was prejudiced. Such an impermissible impropriety on the part of the prosecutor at such a critical time in a trial, i.e., immediately before the jury begins its deliberations, cannot be overlooked, especially when, as here, the trial court refused to give a curative instruction to the jury.

Upon review, we find that the evidence obtained in the search of December 23, 1988, was properly admitted. However, we also find that the prosecutor's comment improperly prejudiced the jury against appellant and that the trial judge's refusal to give a curative instruction to the jury was reversible error. Accordingly, we reverse and remand for a new trial.

Judgment of sentence vacated. Case is remanded for a new trial.