J-S05024-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                : PENNSYLVANIA
                                                :
                        v.                      :
                                                :
                                                :
                                                :
BRUCE WADE THOMPKINS                :
                                                :
            Appellant                           : No. 980 WDA 2017

Appeal from the Judgment of Sentence March 14, 2017
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s): CP-65-CR-0003412-2013

BEFORE: OLSON, J., OTT, J., and STRASSBURGER[*], J.

MEMORANDUM BY OTT, J.:                    **FILED AUGUST 09, 2018**

Bruce Wade Thompkins appeals from the judgment of sentence imposed on him on March 14, 2017, in the Court of Common Pleas of Westmoreland County following his conviction by jury on charges of possession of a controlled substance (heroin) with intent to deliver, possession of a controlled substance, and possession of drug paraphernalia.[1] Thompkins received an aggregate sentence of two to four years' incarceration, followed by three years' probation. In this timely appeal, Thompkins raises three issues. He claims the trial court erred in allowing the Commonwealth to introduce prior bad acts testimony pursuant to Pa.R.E. 404(b); the trial court erred in failing to suppress evidence obtained by a stale search warrant, that had been

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. §§ 113-780(a)(30), (a)(16), and (a)(32), respectively.

improperly issued based upon double hearsay; and the verdict was against the weight of the evidence. Following a thorough review of the certified record, relevant law and the submissions by the parties, we affirm.

Initially, we address Thompkins' evidentiary challenges. Our standard of review for this matter is as follows:

> In reviewing a trial court's ruling on the admissibility of evidence, our standard of review is one of deference. It is firmly established that "[q]uestions concerning the admissibility of evidence lie within the sound discretion of the trial court, and [a reviewing court] will not reverse the court's decision on such a question absent a clear abuse of discretion." **Commonwealth v. Chmiel**, 588 Pa. 478, 738 A.2d 406, 414 (1999).

**Commonwealth v. Giles**, 182 A.3d 460, 461-62 (Pa. Super. 2018).

> An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

**Commonwealth v. Radecki**, 180 A.3d 441, 451 (Pa. Super. 2018) (citation omitted).

The following facts have been gleaned from the certified record. Thompkins and his co-defendant, Michelle Muck, came to the attention of the authorities after a run-in between Thompkins and a neighbor, who had taken a photograph of a car in front of the Thompkins/Muck residence. The neighbor thought drugs were being sold from the residence. Thompkins confronted the neighbor and the neighbor drew a handgun and fired it into the air. The police were called to the scene, but apparently no charges were filed. The police set up surveillance of the residence and witnessed Muck engage in suspicious

activity that gave the appearance of drug dealing. Thompkins was seen driving to a local hotel by a roundabout route, which police found suspicious. However, security footage taken from the hotel revealed Thompkins did nothing illegal. Thompkins was also seen walking to a nearby drug store where he met with a known heroin user, Bruce Clawson. Evidence at trial demonstrated that Clawson and Muck were previously neighbors in an apartment building and that all three, Clawson, Muck and Thompkins, knew each other prior to Thompkins and Muck moving into the house together. After briefly meeting, the two men parted and Clawson entered the drug store. Police went into the store after Clawson exited and found a "scrape bag" in the garbage can of the drug store washroom. A scrape bag is a term for an empty bag that had contained drugs. There was no indication that this bag had any identifying markings on it. Neither was there any specific evidence that the bag came from either Clawson or Thompkins.

Other evidence from surveillance demonstrated that Muck met with several known heroin users in a pattern that suggested drug transactions had taken place. However, no one was arrested because of these meetings, so no drugs were ever recovered.

On May 4, 2013 at approximately 11:50 a.m., Muck was seen meeting with Clawson. Clawson was with another male, Chauncey Myers. Clawson got into Muck's vehicle and the two traveled to her home. Approximately one-half hour later, Clawson met with Myers in a local park and the two men walked into a nearby alley. Shortly thereafter, the two men parted ways.

Police initiated contact with Myers who admitted he possessed drugs. Specifically, Myers had six packets of heroin in bags stamped "The Joker". Myers claimed he obtained the drugs from Clawson who had obtained the drugs in the Muck/Thompkins residence. Myers then agreed to become a confidential informant; however, he died sometime shortly thereafter.[2] Based on the surveillance and the statement from Myers, the police obtained a search warrant for the Muck/Thompkins residence that was executed later that afternoon.

Resulting from the search, the police found five packets of heroin between the mattress and box spring in Thompkins'/Muck's bedroom. There was also over $600.00 in cash in a bowl of water near the bed. In the basement of the house, the police found an additional 90 packets of heroin in a candle box on top of the washing machine. These packets were stamped with "The Joker" and "Sucker Punch". Police also found a marijuana pipe (with residue in it) and a grinder, typically used to grind marijuana buds into smokeable marijuana.

Prior to trial, the Commonwealth filed a document stating the intention to present prior bad act testimony pursuant to Pa.R.E. 404(b). This testimony included proposed testimony from Clawson that he had made several prior purchases of heroin from Thompkins and that on May 4, 2013, after Muck brought him to her residence, he actually bought the drugs from Thompkins.

_____

[2] There is no indication in the record of how Myers died. Accordingly, there is no suggestion that his death was related to this investigation.

- 4 -

There is no formal response to the Pa.R.E. 404(b) notice in the certified record. On the day of the trial, the issue was discussed and counsel for Thompkins objected to the use of a subsequent encounter between Thompkins and Clawson wherein Thompkins allegedly claimed he did not have any heroin available but could supply crack cocaine. This reference was eventually ruled inadmissible. No pre-trial objection was raised regarding Clawson's proposed testimony regarding prior sales of heroin. The trial court allowed that testimony on the grounds that it helped demonstrate Thompkins' intent to sell heroin.

Thompkins' first claim is that the trial court erred in allowing evidence of prior bad acts. Specifically, Thompkins argues Clawson should not have been allowed to testify regarding any alleged prior sales of heroin. Thompkins argues he was not charged with any of the prior alleged sales, and the evidence was highly prejudicial.

As noted above, this argument was not raised before the trial court. "It is well settled that, 'in order to preserve an issue on appeal, a party must lodge a timely objection.'" *Commonwealth v. Gonzalez*, 112 A.3d 1232, 1240 (Pa. super. 2015) (citation omitted). Accordingly, this issue is waived.

Next, Thompkins raises two claims regarding the search warrant used to obtain physical evidence from his residence. First, he claims the warrant had expired; second, he claims the warrant was improperly based upon double hearsay. Neither claim warrants relief.

Thompkins argues the search warrant had an expiration time of May 4, 2013, 2:50 p.m. and the warrant was not executed until May 4, 2013, at 3:04 p.m. He is technically correct. However, a hearing on this issue was held prior to trial. The issuing authority, Magisterial District Judge Frank A. Pallone, testified the expiration date was a clerical error. The intended expiration date was May 6, 2013, at 2:50, p.m. - 48 hours after the search warrant was issued. MDJ Pallone further testified it was his absolute habit and practice to provide police 48 hours to execute a search warrant. The trial court noted in its December 18, 2014 order supporting the denial of Thompkins' motion to suppress, that the warrant was also issued on May 4, 2013 at 2:50 p.m., the same time it was set to expire. Our review of the certified record confirms this fact. The trial court found MDJ Pallone's testimony to be credible, supporting that determination, in part, by the observation that it made no sense for a search warrant to be issued and to expire at the same time. *See* Order, 12/18/2014 at 1.

Our Court has previously held, regarding misstatements of fact within the affidavit of probable cause, "that misstatements of fact will invalidate a search warrant and require suppression of the fruits of the search only if the misstatements of fact are *deliberate* and *material.*" **Commonwealth v. Yerger**, 482 A.2d 985, 990 (Pa. Super. 1984) (citation omitted) (emphasis in original). We believe the instant circumstances, where the issuing authority credibly testifies he committed a clerical error in listing the expiration date of the search warrant as the same time as the issuance time of the search

warrant, and where the warrant was executed less than 15 minutes after issuance, **Yerger** similarly applies. To invalidate a search warrant based upon such an obvious clerical error would represent merely a hyper-technical interpretation of the law. In the instant matter, such an interpretation would not serve the greater interests of justice.

Additionally, Thompkins argues the warrant was invalid because it was based on double hearsay – specifically, Myers' statement to the police that Clawson told him that he got the drugs at the Muck/Thompkins residence. This claim affords Thompkins no relief.

A search warrant can be based on hearsay as long as under the totality of the circumstances there is probable cause to believe the contraband in question will be found at the location in question. As this Court explained:

> However, "[the law] is well settled that an affidavit may be based on hearsay and need not reflect direct personal observation of the affiant." **Commonwealth v. Klimkowicz**, 331 Pa. Super 75, 80, 479 A.2d 1086, 1089 (1984). Indeed, "an affidavit which contains hearsay upon hearsay need not be categorically rejected. Rather, 'double hearsay' must be evaluated in conjunction with the other information in the affidavit to determine whether the information is reliable." **Commonwealth v. Kleindienst**, 403 Pa. Super. 605, 612, 589 A.2d 1119, 1123 (1991).

**Commonwealth v. Singleton**, 603 A.2d 1072 (Pa. Super. 1992).

Here, the statement made initially by Clawson to Myers, then related by Myers to the police, was supported by the independent surveillance by the police that showed Myers met with Clawson, Clawson met with Muck and travelled with her in her car to her residence, shortly thereafter Clawson met

with Myers and almost immediately after that Myers was approached by the police and was found to be carrying drugs. The statement that the drugs originated at the Muck/Thompkins residence matched the surveillance evidence developed by the police. Accordingly, the affidavit of probable cause is not infirm due to improper reliance on hearsay.

We now address Thompkins' weight of the evidence claim.[3] When examining a weight of the evidence claim,

> The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.
>
> * * *
>
> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> * * *
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.
>
> ***Commonwealth v. Clay***, 619 Pa. 423, 64 A.3d 1049, 1054-55 (2013) (quotation marks, quotations, and citations omitted). In

---

[3] Thompkins makes no argument regarding his conviction on the charge of possession of drug paraphernalia (marijuana pipe).

order for an appellant to prevail on a challenge to the weight of the evidence, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." ***Commonwealth v. Sullivan***, 820 A.2d 795, 806 (Pa. Super. 2003) (quotation marks and quotations omitted).

***Commonwealth v. Rodriguez***, 174 A.3d 1130, 1139-40 (Pa. Super. 2017).

Here, the trial court related the evidence provided at trial of witnesses: 1) Detective John Sleasman, who found the box containing 90 packets of heroin, several packets of which were stamped "The Joker" which was the identical stamp found on the drugs Myers possessed; 2) Stacy Cox, a forensic scientist who confirmed more than five grams of heroin was confiscated from the Muck/Thompkins residence; 3) Detective Tony Marcocci, who testified the amount of drugs and cash found, along with the lack of any heroin paraphernalia indicating anyone in the residence personally used heroin indicated the heroin was possessed for distribution; and 4) Bruce Clawson, who testified regarding prior purchases of heroin from Thompkins and that he never witnessed either Thompkins or Muck use heroin. The trial court determined the totality of this evidence supported the jury's guilty verdict. We find no abuse of discretion therein.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date:  8/9/2018