J-S29013-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES BATTISTA | : | |
| | : | |
| Appellant | : | No. 593 EDA 2021 |

Appeal from the Judgment of Sentence Entered January 20, 2021
In the Court of Common Pleas of Chester County
Criminal Division at No(s):  CP-15-CR-0001246-2019

BEFORE:   PANELLA, P.J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.:                **FILED JANUARY 21, 2022**

James Battista appeals from the judgment of sentence entered in the Chester County Court of Common Pleas on January 20, 2021, following his conviction for multiple counts of endangering the welfare of children ("EWOC"). Appellant's convictions stemmed from his child abuse of three children (respectively "Victim 1", "Victim 2", and "Victim 3", in the order in which each disclosed their allegations) while they attended a day care center run by Appellant and his wife between 2006 and 2009. On appeal, Appellant challenges the denial of his pretrial motion to suppress and motion to dismiss. After careful review, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

The trial court accurately summarized the relevant underlying facts as follows:

> The investigation into the abuse began on August 25, 2009 when Victim 1, then four (4) years old, disclosed and demonstrated to her mother how the Appellant puts his face in her private parts at naptime. Victim 1 also reported that the Appellant made her "hump" her blanket. Following that disclosure, Victim 1 's mother took her to Nemours/A.I. DuPont Hospital for Children and investigators forensically interviewed Victim 1 over the course of multiple days about her report. Members of the Pennsylvania State Police also obtained a search warrant and processed the interior of the daycare, taking cots and blankets from the scene.
>
> Several months later, the grandmother of Victim 2 contacted Trooper James Ciliberto, the state police investigator handling the investigation into the Appellant. She reported that Victim 2 had disclosed and then demonstrated for her that the Appellant had touched her private part under her clothing. At the time of her disclosure, Victim 2 was also only four (4) years old.
>
> Over the course of several months in 2009 and 2010, Trooper Ciliberto interviewed the Appellant and his wife multiple times. Both the Appellant and his wife denied ever engaging in sexual contact involving any of the children or their items. Appellant and his wife also stated that it had been months since they themselves had any sexual contact whatsoever within the daycare area. The Appellant's wife repeatedly assured detectives that they would not find any biological material or seminal fluid on any of the children's belongings that had been removed from the home during the search warrant. However, a hand-knit baby blanket, taken directly from the top of one of the nap cots inside the daycare, contained a significant stain of the appellant's seminal material. At the conclusion of the initial investigation, the Commonwealth decided not to charge the Appellant due to the young ages of the children and the risk that they would be too intimidated to testify in a courtroom.
>
> In 2017, the father of Victim 3, by then a seventeen (17) year old female, contacted the State Police to report that his daughter, also a former student at the daycare, had just disclosed that the Appellant repeatedly sexually abused her. Trooper

Stefano Gallina arranged for Victim 3 to be forensically interviewed and Trooper Ciliberto, by then a county detective specializing in crimes of child abuse, conducted the interview and assisted Trooper Gallina in reopening the earlier investigation. Following the disclosure by Victim 3, investigators contacted the parents of Victim 1 and Victim 2 and asked permission to speak to the victims again in a forensic interview setting. Both Victim 1 and Victim 2 were then interviewed and again provided details of sexual abuse they suffered at the hands of the Appellant.

On March 12, 2019, Trooper Gallina obtained an arrest warrant charging the Appellant with the sexual abuse of each of the three named victims and the Appellant was taken into custody the following day.

Trial Court Opinion, 4/25/2021, at 2-3.

Appellant filed pretrial motions, including a motion to dismiss as well as a motion to suppress. Appellant's motion to dismiss was based on assertions that the Commonwealth failed to follow proper forensic interview protocols that contaminated and tainted the victims, and the pre-arrest delay violated his due process rights. In arguing his due process rights had been violated, Appellant argued the pre-arrest delay prejudiced him, and that the pre-arrest delay was a tactical decision on the part of the Commonwealth. The motion to suppress sought to suppress evidence seized from the day care center, on the basis that the search warrant was invalid and not based on probable cause. After a hearing, and after consideration of both motions and applicable law, the court entered orders denying both motions.

On October 2, 2020, a jury found Appellant guilty of three counts of EWOC. The court sentenced Appellant to an aggregate term of three to six

years' imprisonment. After having his appellate rights reinstated *nunc pro tunc*, this timely appeal followed.

In his first issue, Appellant claims the trial court erred in denying his motion to suppress evidence seized pursuant to a search warrant.

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of the suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Eichinger*, 915 A.2d 1122, 1134 (Pa. 2007) (citations omitted). Furthermore, questions of credibility and the weight to be accorded to witness testimony are issues within the sound discretion of the trial court. *See Commonwealth v. Fitzpatrick*, 666 A.2d 323, 325 (Pa. Super. 1995).

Appellant asserts the trial court erred in denying his motion to suppress because the search warrant application did not establish probable cause. Appellant first claims the police omitted material information when they submitted a probable cause affidavit in support of their application, and that if the omitted information had been included, the affidavit would not have provided probable cause. Additionally, Appellant claims the affidavit of probable cause was insufficient because it was based on double hearsay.

> In this jurisdiction, the question of whether probable cause exists for the issuance of a search warrant must be answered according to the "totality of the circumstances" test articulated in

> ***Commonwealth v. Gray***, 509 Pa. 476, 503 A.2d 921 (1985), and
> its Pennsylvania progeny, which incorporates the reasoning of the
> United States Supreme Court in ***Illinois v. Gates***, 462 U.S. 213,
> 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The task of the magistrate
> acting as the issuing authority is to make a "practical, common
> sense assessment" of whether, "given all the circumstances set
> forth in the affidavit," a "fair probability" exists that contraband or
> evidence of a crime will be found "in a particular place." A search
> warrant is defective if the issuing authority has not been supplied
> with the necessary information. The chronology established by the
> affidavit of probable cause must be evaluated according to a
> "common sense" determination.

***Commonwealth v. Huntington***, 924 A.2d 1252, 1255 (Pa. Super. 2007)

(some citations omitted).

Here, Trooper Ciliberto provided the following facts in the affidavit of

probable cause:

> 1. On Thursday, 08/27/09, Sgt. William DONAHUE of the
> Pennsylvania State Police - Troop J - Avondale Criminal
> Investigation Unit presented me with a CY-104 - Report of
> Suspected Child Abuse to Law Enforcement Official, which he
> received from Detective Sgt. Jeffrey GORDON of the Chester
> County Detectives. That CY-104 provided the following
> information:
>
> > a. On Wednesday, 08/26/09, CHILDLINE was contacted in
> > reference to the child here-in referred to as [Victim 1]
> >
> > B. [Victim 1] is a W/N/F, 4 YOA DOB:09/07/04.
> >
> > c. [Victim 1] was brought to the A.I. Dupont Hospital by her
> > mother, on Wednesday, 08/26/09. It is noted that [Victim
> > 1]'s mother is a W/N/F, 44 YOA, DOB: 09/20/65.
> >
> > d. [Victim 1]'s mother brought [Victim 1] to the AI Dupont
> > Hospital because the mother suspected that [Victim 1] had
> > been the victim of a sexual assault perpetrated by [Victim
> > 1]'s day care provider: James A. BATTISTA, W/N/M, 60 YOA,
> > DOB: 12/12/48.

e. The mother reported that [Victim 1]'s day care is the Little Friends Day Care located at 2761 Newark Road, West Grove, PA 19390.

g. The mother reported to AI Dupont personnel that on Tuesday, 08/25/09, [Victim 1] told her that when she ([Victim 1]) attends day care James A. BATTISTA ''comes in and licks her bottom and sometimes puts his bottom in her face too."

2. On Thursday, 08/27/09, at approximately 1115 hrs, I contacted [Victim 1]'s mother via telephone. During the ensuing conversation, the mother related the following:

a. [Victim 1] has attended the Little Friends Day Care for the past three years.

b. On Tuesday evening, 08/25/09, the mother had bathed [Victim 1] following that bath, [Victim 1] told her mother that during nap time at the Little friends day care, James A. BATTISTA "puts his tongue" in her ([Victim 1]) "butt." [Victim 1] then told her mother that James A. BATTISTA "puts his butt" in her ([Victim 1]) face.

c. Following [Victim 1]'s revelation, [Victim 1]'s mother asked [Victim 1] to show her what she meant. At that time, [Victim 1] put a blanket on her mother's head and attempted to spread apart he[r] mother's legs.

d. [Victim 1]'s mother asked [Victim 1] to exhibit what James A. BATTISTA did to her with his tongue. At that time [Victim 1] licked her mother's arm.

e. [Victim 1]'s mother also related to me that after [Victim 1]'s disclosure, she took [Victim 1] to the A.I. Dupont Hospital for a sexual assault examination on Wednesday, 08/26/09. Following the examination, [Victim 1] told her mother that James A. BATTISTA, "put[]s white stuff on my butt." When she asked [Victim 1] where that white stuff came from, [Victim 1] told her mother that BATTISTA produced the "white stuff'' from his "butt."

3. On Monday, 08/31/09, at approximately 1500 hrs, I again contacted [Victim 1]'s mother via telephone and asked her to

describe[] the interior of the Little Friends Day Care. [Victim 1]'s mother advised:

> a. That the day care makes up the entirety of the bottom floor of the bi-level.
>
> b. That the day care is generally entered through the garage side (north side) of the residence.
>
> c. That travelling through[] the day care, north to south, one encounters a room consisting of a table, chairs, and television. One then enters a play room. There is a hall that contains a changing area. The south side of the day care consists of two or three small rooms where the children nap, and a bathroom.

4. Subsequent to my initiation of this investigation, Trooper James GRUDZINSKI conducted a background check of James A. BATTISTA. That background showed that BATTISTA is married to Eleanor F. BATTISTA, W/N/F, 53 YOA, DOB: 10/13/55. Both BATTISTAS operate the Little friends Day Care Center.

5. I am requesting the courts permission to allow Pennsylvania State Police Troopers to search for and seize from the Little Friends Day Care semen and pubic hairs. I believe probable cause exists that these items may be found due to the following reasons:

> a. [Victim 1] told her mother that BATTISTA produced "white stuff' from his "butt" and put it on her "butt." Based on my training and experience "white stuff'' is a child's description of sperm/semen.
>
> b. Based on my training and experience, [Victim 1]'s statements indicated that BATTISTA ejaculated. If he ejaculated, probable cause exists to believe that the ejaculate landed in numerous locations and that if it had not been cleaned up, that semen/sperm can be found. If found, DNA can be extracted from that Semen/Sperm.
>
> c. Based on my training and experience, [Victim 1] is providing a child's description of sexual contact between she and James A. BATTISTA and that BATTISTA'S genitalia is exposed during that sexual contact (exposure of genitalia can be surmised because [Victim 1] described seeing

> BATTISTA ejaculate). Adult male's generally have pubic hair and during sexual contact pubic hair is loosened and falls on and around the area where the sexual contact is occurring.

Motion to Suppress, 9/27/2019, at Exhibit A.

Appellant contends the affidavit of probable cause is insufficient to support a finding of probable cause because it is based on double hearsay. This claim is without merit.

"It is well settled that an affidavit may be based on hearsay and need not reflect direct personal observation of the affiant." ***Commonwealth v. Klimkowicz***, 479 A.2d 1086, 1088 (Pa. Super. 1984) (citations omitted). Further, "an affidavit which contains hearsay upon hearsay need not be categorically rejected. Rather, 'double hearsay' must be evaluated in conjunction with the other information in the affidavit to determine whether the information is reliable." ***Commonwealth v. Klinedinst***, 589 A.2d 1119, 1123 (Pa. Super. 1991). "[P]robable cause is based on a finding of the probability, not a *prima facie* showing of criminal activity, and that deference is to be accorded a magistrate's finding of probable cause." ***Commonwealth v. Baker***, 615 A.2d 23, 25 (Pa. 1992).

Importantly, while the tender years exception to the hearsay rule, codified at 42 Pa.C.S.A. § 5985.1, does not explicitly reference search warrant applications, it does allow admission of hearsay statements regarding sexual abuse from children under the age of 12 at trial, so long as the circumstances indicate the statement is reliable. ***See Commonwealth v. Charlton***, 902

A.2d 554, 559-60 (Pa. Super. 2006). Finally, the uncorroborated testimony of Victim 1, if believed by the trier of fact, was sufficient not only to establish probable cause that a crime had been committed, but to convict Appellant. **See id**. at 562.

Here, the suppression court found that the statements made by Victim 1 to her mother provided a sufficient basis for a reasonable investigative officer to conclude that Appellant had probably committed a crime, and that evidence of the crime might be found in the day care. The suppression court found that the circumstances surrounding the statements offered support for the statements' reliability. These circumstances include the nature of the statement itself, the age of Victim 1, and the fact that the statement was made to her mother. Notably, Victim 1's statements included specific allegations regarding Appellant's conduct that not only indicated he had committed a crime, but also that evidence of that crime might be found in the premises to be searched. Further, the reliability of Victim 1's statements were bolstered by Trooper Ciliberto's opinion that, based on his training and experience, the language used by Victim 1 was commonly used by victims of child abuse, specifically language used to describe sperm/semen and ejaculation. Accordingly, we can find no error or abuse of discretion in the magistrate finding these circumstances provided reassurance that Victim 1's statements were reliable.

Of course, that is only the first step, as Victim 1 did not provide these statements directly to Trooper Ciliberto. Instead, it was Victim 1's mother who relayed these statements to the Trooper. As such, the magistrate was required to assess whether the mother's statements provide sufficient evidence of reliability.

Appellant does not make any specific challenges to the reliability of the mother's statement to the Trooper. And we can discern no reason why the Trooper, or the magistrate, would have reason to believe the mother would fabricate or misstate what Victim 1 had told her. Given that the mother was reporting to the authorities facts that would likely lead to a criminal investigation, the magistrate was entitled to determine that this hearsay statement was supported by sufficient evidence of reliability. Even though the affidavit utilized double hearsay, the totality of the circumstances provided sufficient evidence of reliability to allow the magistrate to rely on the hearsay statements in finding probable cause.

Appellant also argues probable cause was lacking because Trooper Ciliberto omitted the fact that Victim 1 had been interviewed prior to the application, and had denied any wrongdoing by Appellant. Appellant claims that if this fact had been in the affidavit there would not have been sufficient probable cause for issuance of the search warrant.

> [W]here omissions are the basis for a challenge to an affidavit of probable cause in an arrest warrant, we apply the following test: (1) whether the officer withheld a highly relevant fact within his knowledge, where "any reasonable person would have known that

- 10 -

this was the kind of thing the judge would wish to know"; and (2) whether the affidavit would have provided probable cause if it had contained a disclosure of the omitted information.

*Commonwealth v. Taylor*, 850 A.2d 684, 689 (Pa. Super. 2004) (citations omitted).

Here, the omitted fact was that four-year-old Victim 1 was hesitant in accusing Appellant in her first interview with authorities. She denied that anyone had ever touched her genitals or her buttocks. However, she also denied that there was any place on her body that other people shouldn't touch. And even more relevantly, she described Appellant as a bad person, while describing Appellant's wife as a good person.

While the omitted information was information a judge would likely want to know, we conclude the affidavit would have nevertheless provided probable cause even if it had contained a disclosure of this omitted information. We acknowledge that Victim 1 clearly denied Appellant had done something wrong to her. Nonetheless, she identified Appellant as a bad person, and indicated some confusion as to whether it was appropriate for another person to touch her genitals or buttocks. Taken in context, Victim 1's statements in her first interview are indicative of a young, nervous child, who is uncomfortable speaking to strangers about a traumatic event. Far from completely nullifying her statements to her mother, this interview reveals that Victim 1 saw Appellant as a bad person, but she was unwilling or unable to elaborate as to why she felt that way. It certainly is not unreasonable to look at the totality

of the circumstances, including this interview, and conclude that there was a probability of finding evidence of a crime at the daycare premises. Accordingly, the suppression court did not abuse its discretion in denying Appellant's motion to suppress.

Under all these circumstances, we conclude the search warrant was properly issued on probable cause that evidence of a crime would be discovered at the premises as detailed in the affidavit of Trooper Ciliberto.

In his second issue, Appellant claims the trial court erred in denying his motion to dismiss. While Appellant's argument in this regard is long, and often repetitive, his main argument is that the delay between the beginning of the investigation and his arrest violated his due process rights and his right to a fair trial. He asserts the Commonwealth tainted the victims' responses when it failed to follow proper forensic interview protocols. He contends that the pre-arrest delay prejudiced him by preventing him from litigating the issue of this taint.

To address Appellant's due process claim, we must determine whether Appellant suffered actual prejudice from the pre-arrest delay. **See Commonwealth v. Scher**, 803 A.2d 1204, 1222 (Pa. 2002).

> The court must then examine all of the circumstances to determine the validity of the Commonwealth's reasons for the delay. Only in situations where the evidence shows that the delay was the product of intentional, bad faith, or reckless conduct by the prosecution, however, will we find a violation of due process. Negligence in the conduct of a criminal investigation, without more, will not be sufficient to prevail on a due process claim based on pre-arrest delay.

- 12 -

*Commonwealth v. Jette*, 818 A.2d 533, 536 (Pa. Super. 2003) (citation omitted).

Our Supreme Court has found a pre-arrest delay of eleven years constituted actual prejudice. *See Commonwealth v. Snyder*, 713 A.2d 596, 605-606 (Pa. 1998). However, the Court recognized that the Commonwealth may have valid reasons to justify even a lengthy delay, such as "when an investigation yields new evidence after many years of inactivity," and remanded for evaluation of those reasons by the trial court. *Id*. at 605.

Here, the initial investigation occurred in 2009. The case was kept open until 2013, when it was finally closed after no new evidence came forward. In 2017, a third victim came forward with allegations of abuse committed by Appellant during the same time frame as the original two victims. The case was then reopened, and Appellant was arrested in 2019.

Our Supreme Court has previously explained:

In order for a defendant to show actual prejudice, he or she must show that he or she was meaningfully impaired in his or her ability to defend against the state's charges to such an extent that the disposition of the criminal proceedings was likely affected. This kind of prejudice is commonly demonstrated by the loss of documentary evidence or the unavailability of an essential witness. It is not sufficient for a defendant to make speculative or conclusory claims of possible prejudice as a result of the passage of time.

*Scher*, 803 A.2d at 1222 (citations omitted).

Appellant claims he was prejudiced because he lost the ability to challenge the victims' competency by way of a taint or a competency hearing

- 13 -

based on the age of the victims. He asserts the Commonwealth waited over eight years to charge him so that each victim would be over fourteen years of age at the time they testified.

Taint concerns "the implantation of false memories or distortion of actual memories through improper and suggestive interview techniques." **Commonwealth v. Delbridge**, 855 A.2d 27, 30 (Pa. 2003). An allegation that a witness's memory has been tainted is a challenge to the witness's competency to testify. **See id**. at 40. Allegations of taint are therefore properly addressed in a competency hearing, where the court is tasked with determining if the witness has an independent memory of an actual event. **See id**. As it constitutes a challenge to competency, taint must be assessed not only as of the time of trial, but also "at any other relevant time." **Commonwealth v. D.J.A.**, 800 A.2d 965, 971 (Pa. Super. 2002) (*citing* Pa.R.E. 601(b)(1)).

Despite this language in **D.J.A.** and Rule 601, this Court has repeatedly held that taint is totally irrelevant once a witness has attained the age of 14. **See Commonwealth v. Pena**, 31 A.3d 704, 707 (Pa. Super. 2011); **see also Commonwealth v. Judd**, 897 A.2d 1224, 1229 (Pa. Super. 2006). Instead, any such challenge becomes a challenge to credibility, not competency. **See id**.

However, we need not address whether Appellant was prejudiced, as even if we assume he was prejudiced, we cannot find fault with the trial court's conclusion that the Commonwealth had valid reasons for the pre-arrest delay:

> [T]he Commonwealth explained that at the conclusion of the initial investigation, they decided not to charge the Appellant due to the young ages of the children and the risk that they would be too intimidated to testify in a courtroom. This court determined that the Commonwealth's reasons for the delay were valid…. Above all, we found the Appellant's assertions in regards to the Commonwealth's strategy and tactics merely speculative.

Trial Court Opinion, 4/25/2021, at 8-9.

The trial court's findings and credibility assessments are supported by the record. Further, we can find no error in its reasoning. Appellant offered no evidence beyond his mere speculation that the Commonwealth had intentionally delayed his arrest in an effort to prejudice him. The trial court was entitled to weigh this against the Commonwealth's proffered excuse for the delay and find the Commonwealth's proffer more credible. As a result, Appellant has failed to convince us that the trial court erred in denying his motion to dismiss.

As we find the trial court did not err in denying both of Appellant's pre-trial motions, we affirm the judgment of sentence.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/21/2022